**FILED**

**JUN - 3 2005**

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Samuel G. Chia

2450 Lake Street #2
San Francisco CA 94121
(415) 379 9137

v.

Fidelity Investment

12801 Brookhust Street

Garden Grove CA 92640

Case No.

Complaint for damages (RICO activities maintenance of void decisions personal injuries).

AS AND FOR A FIRST AND SEPARATE CAUSE OF ACTION PLAINTIFF COM_ PLAINS OF DEFENDANTS AND EACH OF THEM AND ALLEGES AS FOLLOWS:

1

That the defendants sued herein as does I through XX inclusive, are sued under the provision of FRCP §60 (b)(1-4), 18 U.S.C.§1963(RICO) and California Civ Code §3294(Malice) and personal injuries etc.

2

At all times herein mentioned defendant Fidelity Brokerage Services aka Fidelity Investments is a securities broker firm based in Boston Mass. with a branch in San Francisco Calif. also Salt Lake City Utah and Dallars Texas doing securities tradings on behalf of its customers.

3

At all times herein mentioned plaintiff Samuel G. Chia was a security investor residing in San Francisco Calif. with an ultra service account with defendant in about 1997 for which plaintiff had to sign dft's compulsary arbitration agreement i.e. all disputes between the parties must be arbitrated in NASD (National Association of Securities Dealers Inc) Board instead of submitting to court for a jury trial. prior to this, ptf had a cash account with dft arbitration was unrequired.

4

Because of dft's compulsary arbitration agreement, NASD six year

1

CASE NUMBER 1:05CV01114

JUDGE: John D. Bates

DECK TYPE: Pro se General Civil

DATE STAMP: 06/⬛/2005

1   time limit code became a part of the contract binding the parties
2   while the Mass. and Calif. statute of limitations were irrelevant
3   not controlling the arbitration time limit.

                                    5
4
5     On Jul 2, 1992, ptf accidentally sold 1000 shares of Myland in
    New York Stock Exchange through dft's broker SBM (Salt Lake City's
6
    Brook McElmurry at $39 7/8 a share during which ptf immediately knew
7   that he no longer had such stock in his account.
8
                                    6
9     Ptf then told SBM to buy back 1000 Myland the same moment at $39 3/4
10  a share or ptf could not have the shares to deliver for a settlement.
11
                                    7
12    Although SBM had promised to buy back as told, he however was
13  upset falsely complaining that it was a free riding to threat ptf.
14
                                    8
    Ptf worried there was trouble to come up and immediately turned
15
    on phone amplifier speaker for Ms. Lily Chan to listen to the buy
16  back conversation as a witness in future.
17
                                    9
18    SBM (Brook McELmurry) does I through X had conspired to act as
19  a thief on behalf of Fidelity to steal the buy back shares so that
20  ptf owed Fidelity 2000 Myland as Myland had ennounced its split 2
21  for 1 when its price went up to $49 a share SBM knew in the Wall
    Street Journal, he further conspired to change the first sale trade
22
    Jul 2,92 to Jul 15, 92 and payable at 08/1/92 concealling until the
23
    end of Aug 92 constituting violating Calif. nondisclosure & thief law.
24
                                    10
25    Dtf Fidelity fraudulently made ptf owe it 2000 Myland splitting
26  2 for 1 on Aug. 3 1992 by misrepresenting in the buy back execution
27  with a sold replacing a bought for negative effect and falsely made
28  the buy back a cancelled deal.

                                    2

11

1  Defendant Fidelity was further found to conceal SBM'S bankrupt status
2  in Feb 1992 as informed by NASD Center in Maryland in Sep. 98 in
3  discovery violating the nondisclosure law again.

12

5  Defendant's SBM was found not knowing how to calculate the simple
6  principal amount in the execution substracting the commission and
7  fees from the stock price that some possible unlicensed unqualified
8  person might have falsified himself as a registered SBM PROCURED
9  and concealed by Fidelity.

13

11 Defendant's Reg. Rep SJS (Salt Lake City's John Shied) mailed ptf
12 an execution informing that he short sold 2000 shares of Myland on
13 behalf of ptf in Aug. 10 1992 at $22 3/4 a share that ptf had not
14 been informed he owed dft 2000 Myland yet.

14

16 Whereas John Shied was found not in Fidelity's employment and was
17 not licensed in Calif. in calender year 1992 as notified by the Dept
18 of Corp. of Calif. proving the execution to be falsified in Sep.92.
19 John Shied was found to be employed in Edward D.Jones & Co. in
20 Missouri 3000 miles away in 1992 notified by also the Dept. of Corp.
21 of Calif. not trading on behalf of ptf.

15

23 Again, SJS was found not knowing how to calcucate a principal
24 amount in Aug 10, 1992 execution where it was incorrectly gotten
25 by substracting the commission and fees from the stock price whereas
26 the principal should be the sum of them all that Fidelity had been
27 utilizing unlicensed unqualified persons as its brokers in all trades.

16

That defendant had breached all its fiduciaries as a broker firm illegally violating most of the securities laws as alleged that dft falsely and fraudulently made ptf owe it 4000 Myland and forced him to buy back such shares for pure frauds.

### 17

Ptf then had his difficulties to get dft's broker(s) bought all shares back once as they refused saying " it was not the time for you to buy Myland" for many occasions as they wanted ptf to buy at a higher price for more corrupt moneies from ptf's account.

### 18

At the end of 1992, dft admitted to IRS in its annual report form 1099 that ptf had recovered his 1000 Myland sale in Jul 2 1992 contradicting its misrepresentations that ptf owed it 2000 Myland in Jul 2 1992 due to split on Aug. 3 1992.

### 19

Ptf filed RICO charges against dft in the NASD Board for arbitration in May 21, 1998 within the contractually agreed six year time limit pursuant to NASD time limit code 10304 and defendant's compulsary arbitration agreement.

### 20

Dft represented by attorneys filed its false three year statute bar by Mass/Calif. as its affirmative defense inconsistently trying to breach its compulsary arbitration agreement and violate Calif. statute of limitations as an estopped defendant in its first attempt.

### 21

On Oct. 26, 1998, the chief arbitrator Beverly Narayan held a telephone conference in which she entertained defendant a motion to dismiss basis for Mass/Calif. 3 year statute of limitations for fraud case as asked by dft representative ptf could move for judgment

to be heard together on Dec. 16, 1998 by a three person panel.

22

On Nov. 16, 1998, defendant then formally filed its inconsistent motion to dismiss basis for three year applicable statute of limitations in this jurisdictionless NASD Board breaching its arbitration agreement violating Calif. statute of limitations plainly with no substantial proof that dft had not been engaged in RICO activities.

23

Ptf filed his cross motion with substantial proofs that defendant had been engaged in RICO ACTIVITIES and opposed its motion that the case was not controlled by 3 year statute but 6 year contractually agreed time limit that dft killed its self to file such kind of motion to waive its defense.

24

On Dec.16 1998, NASD ARBITRATORS DISREGARDED THIER JURISDICTIONLESS STATUS AND ABANDONED THIER CODE 10304 WITH 6 YEAR TIME LIMIT TO ARBITRATE granting defendant motion to dismiss basis for 3 year statute of limitations.

25

Early in 1986, the S Ct did remove all arbitrators' jurisdiction in this country (A T & T v. Communications Workers of America 475 US 643 89 L. Ed 2d 648 106 S Ct 1415 and transferred it to the U.S. District court. NASD arbitrators were only allowed to arbitrate case to merit and it was still true in 1998 and beyond, dismissing timely case in complete absence of jurisdiction is unauthorized and adusive with invalid outcome to be nullified upon request pursuant to FRCP§ 60 (b)(4).

26

Ptf appealed pursuant to FAA, 9 U.S.C.A. §1 et seq, 2 more affirmances were added on the void dismissal citing noncontractual cases controlled

by 3 year statute irrelevantly in support ignoring the S Ct laws aforesaid. Ptf petitioned the S Ct which denied its certiorari a year later.

27

Even after two more affirmances, the NASD dismissal is still void meaning nothing was litigated that they can all be nullified at any time upon request or disregards them all and rules on the merit against the defendant which should be held as an estopped party not eligible to defend this complaint in this capital district court herein due to its inconsistent motion to dismiss basis on shorter statute not controlling the case and in a wrong board lacking jurisdiction aforesaid on purpose to maintain its void dismissal/void judgments lawlessly that the court should also issue its injunction against the defendant.

28

Ptf is authorized by 28 U.S.C. §1963 to relitigate this case in this Columbia Distrct Court and U.S.C.A. Const Amend 5 Due Process Phrase empowers this court with personal jurisdiction on non-resident ptf.

29

Pursuant to 28 U.S.C. §60(b), under a very complicated fraudulent situation as shown, there is express way for ptf to claim dft witout following the required procedure and may request court's direct arbitration to grant its judgment in the sum of $42,604 trebling to $127,812 pursuant to Civ. RICO 18 U.S.C. §1964.

30

By reason of said lengthy fatal mental harassments as long as 13 years, ptf has been mentally injured severely by defendant that he has been treated with tranquillizers and sleeping pills to the extent that he has been damaged in the sum of $150,000.

As and for a second and separate cause of action, ptf complains

of defendant and each of them and alleges:

Plaintiff incorpates herein all of the allegations contained in paragraph 1, 2, 3, 4, 5, 6, 7, 8, 9 to 30 inclusive of ptf's First cause of action heretofore stated as through set forth in length herein.

2

That in doing all the acts aforesaid, defendant and each of them acted with deliberate malice in violation of Calif. Civ. Code §3294 entitling plaintiff to a punitive damages in the sum of $150,000.

4

Wherefore plaintiff prays judgment against defendant as follows:

1. The sum of $127,812 for defendant long term RICO activities.

2. The sum of $150,000 for plaintiff's mental damages.

3. The sum of $150,000. punitive and exemplary damages.

4. The sum of $1,600 for the past costs.

Respectfully submitted

May 28, 2005

Samuel G. Chia

plaintiff in pro se
2450 Lake Street #2
San Francisco CA 94121
(415) 379 9137

7