# ARBITRATOR'S EXHIBIT #1

DATE: 9-11-98      UPDATED: _____

CASE NAME: Samuel G. Chia vs. Fidelity Investments   CASE #: 98-02028
a.k.a. Fidelity Brokerage Services

The documents on this list comprise Arbitrator's Exhibit #1. If this list is not accurate, please contact the NASD immediately. Arbitrators must read all documents in Arbitrator's Exhibit #1 prior to hearing.

| | | | Name | Date |
|---|---|---|---|---|
| Claimant(s) (CL) | ☒Yes No[] | | Samuel G. Chia | 5/21/98 |
| Respondent 1 (R1) | ☒Yes No[] | | Fidelity Brokerage Services, Inc. | 8/6/98 |
| Respondent 2 (R2) | []Yes No[] | | | |
| Respondent 3 (R3) | []Yes No[] | | | |
| Respondent 4 (R4) | []Yes No[] | | | |
| Respondent 5 (R5) | []Yes No[] | | | |
| Respondent 6 (R6) | []Yes No[] | | | |
| Respondent 7 (R7) | []Yes No[] | | | |
| Respondent 8 (R8) | []Yes No[] | | | |
| Respondent 9 (R9) | []Yes No[] | | | |

| ✓ | | | | ✓ |
|---|---|---|---|---|
| ✓ | Statement of Claim | | Statement of Answer | ✓ |
| | Amended Statement of Claim | | Joint Answer | |
| | Amendment to Claim | | Counterclaim | |
| ✓ | Supplement to Claim  6/16/98 | | Joint Answer and Counterclaim | |
| | Clarification of Claim | | Answer and Third-Party Claim | |
| | Reply to Counterclaim | | Answer, Counterclaim and Third Party | |
| | Reply to Request for Attorney's fees | | Cross-claim | |
| | Motion | | Request for Clarification | |
| | Motion | | Motion | |
| | Reply to | | Motion | |
| | Reply to | | Reply to | |
| | | | Reply to | |
| | | | | |
| | | | | |
| | Exhibit Binder Attached to: | | Exhibit Binder Attached to: | |

Exh 3

[L. A. No. 26280. In Bank. Apr. 4, 1963.]

HERBERT LERNER, Plaintiff and Appellant, v. LOS ANGELES CITY BOARD OF EDUCATION et al., Defendants and Respondents.

[1] Schools—Teachers—Proceedings to Compel Reinstatement.—Since the period prescribed for the commencement of an action on a liability created by statute, other than a penalty or forfeiture, is three years (Code Civ. Proc., §§ 335, 338, subd. 1), and since a teacher's claim to continued employment as a teacher derives from the tenure laws (Ed. Code, §§ 13304-13338), the three-year period is applicable to an action to compel a school board to reinstate plaintiff as a teacher.

[2] Id.—Teachers — Proceedings to Compel Reinstatement.—The equitable nature of a dismissed teacher's declaratory proceeding to compel reinstatement as a teacher does not alter the applicability of the three-year statute of limitations for the commencement of an action on a liability created by statute, other than a penalty or forfeiture. (Code Civ. Proc., §§ 335, 338, subd. 1.)

[3] Id. — Teachers — Proceedings to Compel Reinstatement. — Where a teacher is dismissed by a local board on the revocation of his credential by the state board, the revocation of his certification by the state board prevents the successful consummation of an action against the local board for reinstatement, and the teacher's cause of action against the local board for reinstatement cannot accrue until the restoration of his credentials by the state board.

[4a, 4b] Id.—Teachers—Proceedings to Compel Reinstatement—Limitation of Actions.—Where a teacher was dismissed by a city board on revocation of his credential by the state board, the fact that the teacher could have joined the city board as a party defendant in an action to compel the restoration of his credential by the state board but did not do so did not serve to start the running of the statute of limitations in favor of the city board as of the time an action against the state board was available to the teacher.

---

[1] See Cal.Jur.2d, Schools, § 518; Am.Jur., Schools (1st ed § 141).

McK. Dig. References: [1-7, 10, 12] Schools, § 106(1); [8] Schools, § 105(1); [9] Limitation of Actions, § 102; [11] Public Officers, § 66; [13, 14, 19] Schools, § 106(2); [15] Limitation of Actions, § 117; [16-18] Words and Phrases.

Exh 4

[5a, 5b] Id.—Teachers—Proceedings to Compel Reinstatement.—Where a city board dismissed a teacher on the revocation of his credential by the state board, and where the state board restored the credential four years later, the teacher's effective cause of action against the city board for reinstatement arose when, despite the restoration of his credential, the city board, which, though it had terminated the employment solely for ineligibility due to the revoked credential, took the position that the teacher was properly discharged for moral unfitness (Ed. Code, § 13403), and refused to reinstate him and also refused to afford him the requisite hearing (Ed. Code, §§ 13404-13441).

[6] Id.—Teachers—Proceedings to Compel Reinstatement.—Where a teacher's credential was revoked by the state board and the teacher was dismissed by the city board, the city board could neither have reinstated nor employed the teacher (Ed. Code, § 13251) prior to the state board's restoration of his teaching credential.

[7] Id.—Teachers—Proceedings to Compel Reinstatement.—Where a teacher was dismissed on the revocation of his credential by the state board, since his declaratory relief cause of action against the city board for reinstatement could not accrue unless and until the state board restored his credential, such favorable action of the state board constituted a condition precedent to effective action against the city board.

[8] Id.—Teachers—Mandamus.—Where a teacher's credential is revoked by the state board and the teacher is dismissed by the city board, a writ of mandate against the city for reinstatement may not issue until the state board grants the teacher his credential.

[9] Limitation of Actions—Suspension of Statute—Disabilities.—The running of the statute of limitations is suspended during any period in which plaintiff is legally prevented from taking action to protect his rights, that is, the action does not accrue so long as the period of prevention runs.

[10] Schools—Teachers—Proceedings to Compel Reinstatement.—Where a teacher could not compel reinstatement by the local school board until the state board restored his teaching credential, restoration being a condition precedent not within the teacher's power, and, after being informed by the state board that it lacked jurisdiction to restore his credential, he took no coercive action but later the state board voluntarily restored the credential, suspension of the running of the statute of

---

[9] See Cal.Jur.2d, Limitation of Actions, § 191; Am.Jur., Limitation of Actions (1st ed § 192).

fuse compliance. Likewise, any waiver by the noncompliant official to extend or abandon the statute must subsume that the statute will not be invoked by some *other* official. Indeed, the waiver or estoppel may result from a determination by the noncomplying official that the public interest would best be served by not invoking the technical defense of the statute (as in the instant case; see also *Mitchell v. County Sanitation Dist.* (1957) 150 Cal.App.2d 366 [309 P.2d 930]). If so, such a determination should not be frustrated by its unexpected rejection by officials who have hitherto taken no independent position.

Thus our analysis of these possibilities yields the conclusion that the statute of limitations should not begin to run in favor of an official in such a situation until he assumes an independent position adverse to the plaintiff. The statute begins to run if the official *changes his position* and indicates his intention to deny relief *independently* of action by other officials. Alternatively, the period of limitation commences if, as a result of a change of position by, or judgment against, the noncompliant official, the originally compliant official can no longer justify his refusal to act by reference to the noncompliant official's refusal, and thus his further inaction must be inferred to rest on independent grounds.

Applying these principles in the present case, we conclude the statute began to run in favor of the city board on June ___, 1958, when the state board's restoration of Lerner's credential compelled the city board either to reinstate Lerner or to take an independent adverse position. Only by such a conclusion can we avoid the negation of the legal principle that one is entitled to assume that public officials will perform mandatory duties until they have manifested a contrary intent.

Even assuming, however, that the change in the city board's position in 1958 did not create a new cause of action against it, the board still confronts both a waiver and an estoppel as to its assertion that the statute began to run against Lerner in December 1954. [12] We believe that the action of the state board in restoring Lerner's credential without raising the defense of the statute constitutes a waiver of the statute. [13] The state board's advice to Lerner that it lacked jurisdiction or authority to restore his credential, and that no school district could legally employ him, largely induced Lerner's inaction and would estop the state board from later

reliance upon the statute. Furthermore, we shall point out that the privity between the city and state boards is such that the estoppel and waiver of the state board bind the city board.

That an estoppel may bar an administrative board from raising the statute of limitations follows from our ruling in *Tyra v. Board of Police etc. Comrs.* (1948) 32 Cal.2d 666 [197 P.2d 710]. In that case the Long Beach Board of Police and Fire Commissioners incorrectly advised plaintiff, an injured fireman, that he could not obtain a pension so long as he received workmen's compensation benefits. After the limitation period had run, the plaintiff sought mandate to compel payment of the pension. The court stated that: "The delay charged to the plaintiff was induced by the erroneous position and advice of the defendants and their attorneys. They may not therefore now properly interpose the defense as a bar to the plaintiff's delayed course of action." (Pp. 670-671; see also *Adams v. California Mut. B. & L. Assn.* (1941) 18 Cal.2d 487 [116 P.2d 75].)

[14a] The estoppel binds not only the state board, but also those in privity with it. (*Roper v. Smith* (1919) 45 Cal. App. 302, 306 [187 P. 454].) [15] So long as no conflict of interest arises between the privies,[6] the waiver of the statute also binds the privy of the waiving party. (See *Berner v. Berner* (1957) 152 Cal.App.2d 766, 773 [314 P.2d 114] [dictum]; *Goldberg, Bowen & Co. v. Demick* (1925) 77 Cal. App. 535, 540 [247 P. 261] [dictum]; *Glenn v. McDavid* (1942) 316 Ill.App. 130, 136-137 [44 N.E.2d 84, 87].)[7]

---

[6] In cases in which a conflict of interest does exist, the waiver may not be binding on the privy. See generally 31 Cal.Jur.2d, Limitation of Actions, § 206. For example, a waiver by a debtor will not bind a surety. (*Easton v. Ash* (1941) 18 Cal.2d 530 [116 P.2d 433].) In the present case, however, two agents of the same government, each representing the public interest, are involved.

[7] Other cases have extended the waiver to bar privies from raising the defense, but have avoided discussing the concept of "privity," and confined their discussion to the particular relationship before them. (*Dexter v. Pierson* (1931) 214 Cal. 247 [4 P.2d 922] [subsequent mortgagee with notice of prior mortgagee's waiver barred]; *Brownrigg v. dePrees* (1925) 196 Cal. 534 [238 P. 714] [administratrix barred by decedent's contractual waiver]; *Glassell v. Glassell* (1905) 147 Cal. 510 [82 P. 42] [executor barred by waiver in will]; *Carberry v. Trentham* (1956) 143 Cal.App.2d 83 [299 P.2d 966] [wife barred by husband's waiver]; *Estate of Hilde* (1950) 101 Cal.App.2d 419 [224 P.2d 765] [administratrix barred by decedent's contractual waiver]; *Union Title Ins. Co. v. Maytag Co.* (1934) 2 Cal.App.2d 48 [37 P.2d 312] [successive owners of land]; *Andre v. Stilson* (1940) 37 Cal.App.2d 834 [99 P.2d 557] [same].)