

They merely told the jury that they were the judges of the evidence and not to take counsel's statements as evidence. That did not at all meet the error in implying that the failure to call the wife could be held against the defendant. That had nothing to do with evidence. It had to do with the failure to call a witness. The instruction to the jury at the close of the evidence was equally ineffective. It was general, not specific, and was given after the impression had become fixed in the jurors' minds.

In my opinion it is too obvious for any one to attempt to deny, that the misconduct of the prosecuting attorney in this case was wilful and deliberate, and was designed to and did prejudice the defendant to such an extent that it could not be cured by any admonition the court might have given, and the defendant is therefore entitled to a new trial. For the foregoing reasons, I would reverse the judgment.

Schauer, J., concurred.

Appellant's petition for a rehearing was denied October 27, 1948. Carter, J., and Schauer, J., voted for a rehearing.

---

[L. A. No. 20603. In Bank. Sept. 29, 1948.]

JOSEPH W. TYRA, Appellant, v. BOARD OF POLICE AND FIRE PENSION COMMISSIONERS OF THE CITY OF LONG BEACH et al., Respondents.

[1] Estoppel — Parties Affected — Public Agencies. — Erroneous statements of city pension commissioners to a disabled fireman that so long as he was receiving workmen's compensation benefits he was not entitled to a pension, and that benefits under the compensation act were in lieu of the pension benefits provided in the city charter, which induce the fireman to delay applying for a pension until after the statutory time had elapsed, furnish a basis for estoppel of the commissioners from interposing the statute of limitations as a bar to a proceeding to compel the granting of a pension.

] See 10 Cal.Jur. 650; 19 Am.Jur. 820.
McK. Dig. References: [1] Estoppel, § 44; [2, 3] Municipal Corporations, § 324(5).

[2] Municipal Corporations — Fire Department — Pension. — Under a city charter provision requiring the pension commissioners to order payment of pension whenever a member of the fire department should become so physically or mentally disabled as the result of an injury as to render necessary his retirement from active service, it is not the injury but the resulting inability to perform the work that is the controlling factor in establishing the right to a pension, and hence the statute of limitations would not commence to run prior to the determination by the commission that the condition of the disability renders retirement necessary or its arbitrary refusal so to determine.

[3] Id. — Fire Department — Pension. — Where a fireman injured in the course of his employment unquestionably became totally disabled subsequent to an operation performed about two years prior to the filing of his first application for the pension benefits provided in a city charter, the pension commissioners' rejection of such application was unsupported by the evidentiary facts.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie E. Still, Judge. Reversed.

Proceeding in mandamus to compel city pension commissioners to order a fireman's retirement on a pension. Judgment for defendants reversed.

Kenneth Sperry for Appellant.

Irving M. Smith, City Attorney, Nowland M. Reid, Assistant City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Respondents.

SHENK, J. — The plaintiff sought the writ of mandate directing the defendants Police and Fire Pension Commissioners of the city of Long Beach to order his retirement on a pension pursuant to section 187(3) of the city charter. (Stats. 1931, p. 2780.) The trial court concluded that the proceeding was barred by the provisions of section 338, subdivision (1), of the Code of Civil Procedure. The plaintiff appealed from the judgment denying his application.

The plaintiff became a member of the fire department of the city of Long Beach on September 1, 1929, and was assigned to duty as a fireman. On February 8, 1937, in the course of his employment, he was precipitated in a sitting position from

[2] See 18 Cal.Jur. 997.

a collapsing stepladder, sustaining injuries to his spine and left hip which necessitated his absence from his duties as fireman. On November 30, 1937, he filed an application with the Industrial Accident Commission for an award based on total permanent disability. On March 4, 1942, he was granted workmen's compensation benefits and lifelong medical care based on 100 per cent permanent disability. On December 30, 1941, and again on April 11, 1942, he applied to the defendants for a pension, but the applications were denied. He filed the petition for the writ of mandate in the superior court on August 26, 1942.

Section 187 (1) of the charter of the city of Long Beach in effect during the period here involved created the Board of Police and Fire Pension Commissioners to administer the pension provisions of that section. Subdivision (3) provided that whenever a member of the police or fire department should become so physically disabled by reason of bodily injuries received in the discharge of duties "as to render necessary his retirement from active service, the commission shall order and direct that such person be retired from further service" and be paid from the pension fund in monthly installments an amount equal to one-half of his salary. It was also provided that no person should be retired unless there had been filed with the commission, prior to the granting of the pension, certificates of disability from three regularly licensed practicing physicians of the city, including the police surgeon, a physician selected by the commission, and a physician selected by the person applying for the pension.

Section 188 of the charter provided that the provisions of section 187 were to be in lieu of the provisions of the Workmen's Compensation Act and that a person applying for a pension should be deemed to have waived the benefits under that act; but that if the Supreme Court of the state should decide that the provisions of the compensation act could not be waived, then the payments under the pension provisions should be credited on the amounts allowed under the Workmen's Compensation Act.

This is the second appeal in this proceeding. The first appeal was from a judgment of dismissal entered on an order sustaining the defendants' objection to the introduction of evidence on the ground that the petition showed that the alleged cause was barred by the provisions of section 338, subdivision 1, of the Code of Civil Procedure; also on the ground that the plaintiff, having accepted the benefits of the Workmen's Compensation Act, was not entitled to a pension under the provisions of the city charter. On that appeal it was held that neither the allegations of the petition nor the finding and order of the Industrial Accident Commission showed that the disability was permanent so as to necessitate retirement prior to February, 1940. On the authority of *Larson v. Board of Police & Fire Pension Commissioners* (1945), 71 Cal.App.2d 60 [162 P.2d 33] (see also *Johnson v. Board of Police etc. Pen. Commrs.* (1946), 74 Cal.App.2d 919 [170 P.2d 48], it was concluded that by accepting benefits under the Workmen's Compensation Act the plaintiff did not waive his right to a pension. (*Tyra v. Board of Police & Fire Pension Commissioners*, 71 Cal.App.2d 50 [162 P.2d 35].)

The plaintiff then filed an amended and supplemental complaint. The defendants answered. At the trial there was testimony of the plaintiff and of several physicians, some of whom were produced by the city of Long Beach, that at first his disability was temporary and he would be able to resume his duties; that the disability was not determined to be permanent until an operation on his spine, suggested by the city and performed in October, 1939, failed of its purpose to restore greater mobility; that before the operation he was able to move about to a limited extent; but that as a result of the operation he was unconscious from a condition of complete paralysis for a period of 28 days and that he was not advised until about February 1, 1940, by his attending physicians that he would never be able to walk again. The trial court found and determined that November 30, 1937, was the date when the plaintiff was so totally and permanently disabled as to render necessary his retirement from active service in the fire department, and that since more than three years had elapsed the proceeding was barred by the provisions of subsection 1 of section 338 of the Code of Civil Procedure.

It is the plaintiff's contention that the evidence does not support the finding and conclusion. The plaintiff's application of November 30, 1937, to the Industrial Accident Commission sought workmen's compensation benefits on the basis of total permanent disability. It is not contended by the defendants that there was any determination that the disability was total and permanent until the award of the Industrial Accident Commission dated March 2, 1942. The trial court was apparently of the opinion that the application of

the plaintiff for compensation benefits alleging total permanent disability created a conflict in the evidence and that those allegations in the compensation matter were binding and conclusive on the plaintiff in the pension matter. On the other hand, the plaintiff's possible limited capacity to perform certain duties in the fire department indicated an absence of necessity for his retirement from all service. The city charter, in section 187 (3), vested discretion in the defendants and the city to retain in or restore to employment a member having only partial disability even though he had been granted a pension. The plaintiff was not removed from employment for disability pursuant to civil service regulations, but was retained as on sick leave. It is unnecessary to determine whether the trial court erred in receiving the evidence of the inconsistent allegations in the collateral matter either as an admission against interest or for impeachment purposes because of our determination in respect to other contentions next to be considered.

[1] In his amended and supplemental petition the plaintiff pleaded the elements of estoppel on the part of the defendants to interpose the bar of the statute of limitations. Although it was denied by the answer, it is now conceded that the defendants and the attorneys representing them advised the plaintiff that so long as he was receiving workmen's compensation benefits he was not entitled to a pension. He was advised that he could not have both, and that benefits under the compensation act were "in lieu of and in place of the benefits provided in section 187 of the Charter." This position of the defendants amounted to a departmental rule of action at least until the decision in the cases of *Tyra v. Board of Police etc. Commrs.* and *Larson v. Board of Police etc. Commrs., supra.* In the latter decision (71 Cal.App.2d at 63) it was pointed out that there was no such provision in the charter, the provision of section 188 being that the acceptance of the pension benefits under the charter would be deemed a waiver of benefits under the provisions of the compensation act. Responsive to those decisions the defendants did not include the defense of waiver in their answer to the amended and supplemental petition. But the failure of the defendants now to insist upon waiver on the part of the plaintiff does not absolve them from the effect of their conduct as a rule of the department by which the plaintiff was persuaded not to apply for a pension until some time in 1941. The delay charged to the plaintiff was induced by the erroneous position

and advice of the defendants and their attorneys. They may not therefore now properly interpose the defense as a bar to the plaintiff's delayed course of action. The doctrine of equitable estoppel declared and applied in such cases as *Farrell v. County of Placer,* 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323] (cases cited at p. 628), and *Benner v. Industrial Acc. Com.,* 26 Cal.2d 346 [159 P.2d 24] (cases cited at p. 349), is applicable under the circumstances here presented.

[2] Moreover, the provisions of the city charter should not be construed as necessarily fixing any particular point of time or event when the operation of the statute of limitations would commence in cases where the commission's determination of the effects of the injury was essential to the creation of the right. The duty of the defendants to grant the pension may not always attach automatically upon the happening of an accident as where the right to a widow's pension accrues upon the death of the employee (*Dryden v. Board of Pension Commissioners,* 6 Cal.2d 575 [59 P.2d 104], *Dillon v. Board of Pension Commissioners,* 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800]). Here something more than the happening of the injury was intended by a provision requiring the commission to order payment of pension whenever a member of the department should become so physically or mentally disabled as a result of the injury as to render necessary his retirement from active service. As said in *Brooks v. Pension Board,* 30 Cal.App.2d 118, 123 [85 P.2d 956], it is not the illness or injury but the resulting inability to perform the work that is the controlling factor in establishing the right to a pension. The duty of the defendant did not attach nor was the right created until that further point of time was reached. It could not be fixed without a determination of the results of the injury, the condition of the employee and the necessity for the retirement. These matters were left to the determination of the commission which had the power and duty to direct the payment of the pension. There was no charter provision limiting the time with relation to any specified event within which a member of the department must make his request to the commission. The required certificates did not have the effect of commencing any limitation period. They were merely the necessary evidentiary justification for action by the commission. (*Holt v. Board of Police etc. Commrs.,* 86 Cal.App. 2d 714, 719 [196 P.2d 94]; *Metcalf v. McAdoo, Police Comm'r,* 48 Misc. 420 [95 N.Y.S. 511].)

672    Tyra v. Board of Police etc. Commrs.    [32 C.2d

The defendants' reliance on *Dillon v. Board of Pension Commissioners, supra* (18 Cal.2d 427) is unavailing because of the difference in the factual situation and the charter provisions. The statement in the Dillon case that the action to determine the existence of the right necessarily precedes any right to recover pension installments, does not foreclose a determination that the right has not come into existence until the commission has concluded that the condition of disability renders retirement necessary or has arbitrarily refused to do so. No other conclusion is tenable in view of the policy of liberal construction and application of pension provisions. (*Dillard v. City of Los Angeles*, 20 Cal.2d 599, 602 [127 P.2d 917]; *Gibson v. City of San Diego*, 25 Cal.2d 930, 934 [156 P.2d 737]; *Dierkes v. City of Los Angeles*, 25 Cal.2d 938, 942 [156 P.2d 741]; *England v. City of Long Beach*, 27 Cal.2d 343, 346-7 [163 P.2d 865]; *Larson v. Board of Police etc. Commrs., supra*, 71 Cal.App.2d at p. 63.)

[3] Since unquestionably the plaintiff became totally incapacitated at some point of time subsequent to the operation performed during the latter part of 1939, it must be concluded that the defendants' rejection of the first pension application of the plaintiff made in 1941 was unsupported by the evidentiary facts.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

[S. F. No. 16417. In Bank.—Aug. 25, 1941.]

A. W. ADAMS et al., Appellants, v. CALIFORNIA MUTUAL BUILDING AND LOAN ASSOCIATION (a Corporation) et al., Respondents.

JOHN J. BYL et al., Appellants, v. CALIFORNIA MUTUAL BUILDING AND LOAN ASSOCIATION (a Corporation) et al., Respondents.

[1] Equity — Laches — Waiver and Estoppel: Limitation of Actions — Waiver and Estoppel.—A person may be estopped by his conduct to rely upon the defenses of laches and the bar of the statute of limitations, as where the delay in commencing an action is induced by his conduct.

[2] Id. — Laches — Waiver and Estoppel: Limitation of Actions — Waiver and Estoppel—Application of Rules to Building and Loan Commissioner.—A building and loan commissioner is estopped to rely on the defenses of laches and limitation of actions in bar of an action by shareholders in a building and loan association where he continually represented that the decision in a pending action would be determinative of the rights of all persons similarly situated, and where suits were not earlier instituted in reliance upon such representations.

[3] Costs — Attorney's Fees — Representative Actions.—In a representative action by shareholders in an insolvent building and loan association to establish the right to share ratably in the assets, any award of counsel fees should be paid out of that portion of the funds recovered by those for whose benefit the action is brought. The reasonableness of the award is for the determination of the trial court.

APPEAL from a judgment of the Superior Court of Santa Clara County. Warren V. Tryon, Judge Presiding. Reversed with directions.

Consolidated actions to establish the rights of mutual shareholders and holders of "thrift accounts" in an insolvent building and loan association to share equally on liquidation

---

Estoppel to rely on statute of limitations, note, 130 A. L. R.
See, also, 16 Cal. Jur. 675; 34 Am. Jur. 323.

cK. Dig. References: 1, 2. Equity, § 48; Limitation of Actions, § 12; 3. Costs, § 32.

with other creditors in the assets. Judgment for defendants reversed with directions.

L. H. Schellbach, Harold C. Holmes, Jr., and Breed, Burpee & Robinson for Appellants.

D. T. Jenkins, Walter Carrington and Patrick J. Kearns for Respondents.

GIBSON, C. J.—These consolidated actions, like the Martin case, S. F. No. 16004, ante, p. 473 [116 Pac. (2d) 71], this day decided, present the question whether the plaintiffs, as holders of mutual shares and thrift accounts in the defendant California Mutual Building and Loan Association, are entitled to share in liquidation as creditors on a parity with the holders of investment certificates. The history of the association and the other facts necessary to a decision of this appeal have been stated in the Martin case, and the decision in that case is determinative of the principal issues presented here. However, inasmuch as the trial court here found, contrary to our conclusion in that case, that mutual shares and thrift accounts are subordinate to investment certificates in liquidation, we must, for the reasons stated in the Martin case, reverse the judgment from which this appeal is taken.

[1, 2] The actions here involved are not barred by laches or the running of the statute of limitations. There is uncontradicted evidence in the record that the office of the defendant Building and Loan Commissioner continuously indicated and represented, verbally and in writing, that the decision in the Martin case, which was first instituted and in which pursuant to agreement with him the issues were so framed as to cover the several types of investment here involved, should be determinative of the rights of all persons or groups similarly situated; and that it was in reliance on such representations that these suits were not earlier instituted. Throughout that litigation, as the commissioner paid liquidating dividends to investment certificate holders, he would set aside a proportionate amount to be paid to all "shareholders" should they be classed in that litigation as creditors entitled to parity with investment certificate holders. Under all of the circumstances, the commissioner is estopped to plead laches or the statute of limitations. It is well settled that a person by his conduct may be estopped to rely upon these de-

Aug. 1941.]  ADAMS v. CALIFORNIA MUT. B. & L. ASSN.  439
[18 C. (2d) 467]


[18 C. (2d) 467]

fenses. (*Rapp v. Rapp*, 218 Cal. 505, 509 [24 Pac. (2d) 161]; *Calistoga Nat. Bank v. Calistoga Vineyard Co.*, 7 Cal. App. (2d) 65, 72 [46 Pac. (2d) 246]; 16 Cal. Jur. 575; 130 A. L. R. 8.) Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense. (*Rapp v. Rapp, supra*; *Miles v. Bank of America N. T. & S. Assn.*, 17 Cal. App. (2d) 389, 398 [62 Pac. (2d) 177].) These principles have been applied to hold a defendant estopped to plead the statute where he represented that he would be bound by the outcome of a pending suit. (*Missouri, K. & T. Ry. Co. v. Pratt*, 73 Kan. 210 [85 Pac. 141]; *Daniel v. Edgecombe County*, 74 N. C. 494; 130 A. L. R. 8, 60.) Plaintiffs' actions here were seasonably instituted upon discovery of the commissioner's change of attitude as regards the effect of the Martin litigation upon the rights of other investors in the association.

[3] Inasmuch as these are representative actions, brought on behalf of named plaintiffs and others similarly situated but not represented in corresponding litigation, any award of counsel fees should be paid out of that portion of the fund recovered by those for whose benefit these actions were brought. (*In re Pacific Coast Bldg.-Loan Assn.*, 15 Cal. (2d) 155, 157 [99 Pac. (2d) 261].) The reasonableness of any such award of counsel fees is for the determination of the trial court when the causes are remanded, as they must be, for further proceedings in conformity with the views and conclusions expressed in the Martin decision.

The judgment is reversed with directions to the trial court to proceed as herein indicated.

Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

I concur in the judgment. Curtis, J.



| CUSTOMER NO. | BROKERAGE NO. | TYPE | CUSIP | NET AMOUNT |
|---|---|---|---|---|
| X04-022772 | 3 | | 628530107 | 39,686.44 |

SETTLEMENT DATE: 07-10-92

MYLAN LABS INC

SAMUEL G CHIA
1901 VALLEJO ST.
SAN FRANCISCO          CA 94123

FIDELITY BROKERAGE SERVICES INC
PO BOX 945
BOSTON                    MA 02103

099 0504022772 31 000

PLEASE RETURN THIS TOP PORTION WITH SECURITIES SOLD
OR PAYMENT IN THE AMOUNT DUE BY SETTLEMENT DATE

| CUSTOMER NO. | BROKERAGE NO. | TYPE | REG. REP. | TRADE DATE | SETTLEMENT DATE | TRANS NO. | CUSIP NO. | EXC |
|---|---|---|---|---|---|---|---|---|
| X04-022772 | 3 | SBM | | 07-02-92 | 07-10-92 | 990437 | 628530107 | 8 |

YOU SOLD          1,000          AT          39 7/8

SECURITY                SYMBOL: MYL
DESCRIPTION

MYLAN LABS INC SHORT SALE
CORD DATE 07/15/92 PAYABLE DTE 08/01/92
RRECTED CONFIRM

| | |
|---|---|
| PRINCIPAL AMOUNT | 39,875.00 |
| INTEREST | |
| COMMISSION | 187.23 |
| STATE TAX | |
| MISCELLANEOUS CHARGES | |
| SEC FEE / POSTAGE | 1.33 |
| SETTLEMENT AMOUNT | 39,686.44 |

SAMUEL G CHIA
1901 VALLEJO ST.
SAN FRANCISCO          CA 94123

FIDELITY BROKERAGE SERVICES, INC
455 MARKET STREET
STE. 100
SAN FRANCISCO, CA 94105

TELEPHONE NUMBER: (800) 544-6565

FIDELITY BROKERAGE SERVICES, INC.
MEMBER NYSE/SIPC

**Fidelity Investments® Discount Brokerage**

| CUSTOMER NO. | BROKERAGE NO. | CUSIP | NET AMOUNT |
|---|---|---|---|
| | X04-022772  3 | 628530107 | |

MYLAN LABS INC

SETTLEMENT DATE: 00-00-00    DTC 243

SAMUEL G CHIA
1901 VALLEJO ST
SAN FRANCISCO      CA 94123

FIDELITY BROKERAGE SERVICES INC
PO BOX 945
BOSTON                    MA 02103

099 0504022772  31  000

PLEASE RETURN THIS TOP PORTION WITH SECURITIES SOLD OR PAYMENT IN THE AMOUNT DUE BY SETTLEMENT DATE

| CUSTOMER NO. | BROKERAGE NO. | TYPE | REG. REP. | TRADE DATE | SETTLEMENT DATE | TRANS NO. | CUSIP NO. | EXC | ORIG. |
|---|---|---|---|---|---|---|---|---|---|
| | X04-022772 | 3 | 826 | 12-24-92 | 00-00-00 | 000626 | 628530107 | 0 | 4 |

TO BUY         2,375      AT       24 3/8

SECURITY         SYMBOL: MYL
DESCRIPTION

MYLAN LABS INC DUPLICATE CONFIRM
SHORT COVER EX DIVIDEND
OPEN ORDER CONFIRM XDIV UPDATE 12/24/92
LIMIT ORDER ALL OR NONE
REF/CDW/CCTS

PRINCIPAL AMOUNT

INTEREST

COMMISSION

STATE TAX.

MISCELLANEOUS CHARGES

SEC FEE / POSTAGE

NOT AN EXECUTION

SETTLEMENT AMOUNT

SAMUEL G CHIA
1901 VALLEJO ST
SAN FRANCISCO      CA 94123

FIDELITY BROKERAGE SERVICES, INC
455 MARKET STREET
STE. 100
SAN FRANCISCO, CA  94105

TELEPHONE NUMBER: (800) 544-6565

FIDELITY BROKERAGE SERVICES, INC.
MEMBER NYSE/SIPC
ACCOUNT CARRIED WITH NATIONAL FINANCIAL SERVICES CORPORATION

Exh 15A



| CUSTOMER NO. | BROKERAGE NO. | | CUSIP | NET AMOUNT |
|---|---|---|---|---|
| X04-022772 | 3 | | 628530107 | 39,561.72 |

MYLAN LABS INC

SETTLEMENT DATE: 07-10-92   DTC 243

SAMUEL G CHIA
1901 VALLEJO ST.
SAN FRANCISCO        CA 94123

FIDELITY BROKERAGE SERVICES INC
PO BOX 945
BOSTON                MA 02103

099 0504022772 31 000

PLEASE RETURN THIS TOP PORTION WITH SECURITIES SOLD
OR PAYMENT IN THE AMOUNT DUE BY SETTLEMENT DATE

| CUSTOMER NO. | BROKERAGE NO. | TYPE | REG. REP. | TRADE DATE | SETTLEMENT DATE | TRANS NO. | CUSIP NO. | EXC | ORI |
|---|---|---|---|---|---|---|---|---|---|
| | X04-022772 | 3 | SBM | 07-02-92 | 07-10-92 | 000437 | 628530107 | 8 | 1 |

YOU SOLD      1,000      AT      39 3/4

SECURITY                SYMBOL: MYL
DESCRIPTION

MYLAN LABS INC SHORT SALE
CORR PRICE CANCELLED TRADE

| | |
|---|---|
| PRINCIPAL AMOUNT | 39,750.00 E |
| INTEREST | |
| COMMISSION | 186.95 |
| STATE TAX | |
| MISCELLANEOUS CHARGES | |
| SEC FEE / POSTAGE | 1.33 |
| SETTLEMENT AMOUNT | 39,561.72 |

SAMUEL G CHIA
1901 VALLEJO ST.
SAN FRANCISCO        CA 94123

FIDELITY BROKERAGE SERVICES, INC
455 MARKET STREET
STE. 100
SAN FRANCISCO, CA  94105

TELEPHONE NUMBER: (800) 544-6565

FIDELITY BROKERAGE SERVICES, INC.
MEMBER NYSE/SIPC
ACCOUNT CARRIED WITH NATIONAL FINANCIAL SERVICES CORPORATION

Exh 15