EXHIBIT 6



99-17138

Samuel G. Chia
2450 Lake Street #2
San Francisco CA 94121
415 379 9137

## United States District Court
## Northern District of California

Samuel G. Chia
      petitioner/claimant

  v.

Fidelity Investment aka Fidelity
Brokerage Services Inc.
      appellee/respondent

Case no. C99 0027 VRW
9 U.S.C. § 12 Notice of motion
to vacate
Hearing Date: April 30 1999
Hearing Hour:10:30 a.m.

To: Respondent/appellee Fidelity Investment aka Fidelity Brokerage Services Inc and its

Attorneys of record:

    Notice is hereby given that on Friday, April 30 1999 at 10:30 A.M. or as soon

thereafter as this matter may be heard in the Courtroom of the Honorable Walker, U.S.

District Court 450 Golden Gate Ave 17th floor San Francisco California, claimant/petitioner

will move the court for an order to vacate award rendered on Dec. 16, 1998 in NASD (National

Association of Security Dealers Inc) 525 Market Street 3/floor San Francisco California

pursuant to 9 U.S.C.A. § 10 (a) (1) and (4).

    This motion is further supported by petitioner's declarations, evidence and the

related pleadings in NASD motions and FRCP § 60 (b) and memorandum of points authorities

cited in his motion.

Date 17 1999            By:                          *Samuel G. Chia*
                                                   Samuel G. Chia
                                               claimant/petitioner

1  Samuel G. Chia
   2450 Lake Street #2
   San Francisco CA 94121
2  415 379 9137

3

4          United States District Court for Northern District of California

5

6  Samuel G. Chia
           claimant/petitioner                    Case no. 99 0021 VRW
7          v.                                      petitioner's memorandum of point
   Fidelity Investment aks Fidelity               authorities and declaration in
   Brokerage Services Inc.                        support of his motion to vacate
8          respondent/appellee                    the NASD board's decision dismiss-
                                                  ing petitioner's claim NASD case
9                                                 no. 98 02028 on Dec. 14, 1998
                                                  based on citations-statute of
10                                                limitation pursuant to 9 U.S.C.A.
                                                  § 10 (a) (1) and (4).
11

12

13                          Introduction

14     This petition involves claimant/petitioner's appeal by motion to this court for vacating

15  the lower NASD board's award (decision) dismissing petitioner's claim on Fidelity Investment

16  aka Fidelity Brokerage Services Ins multiple frauds in security by fraud citing irrelevant

17  and inapplicable state statute of limitations of Mass. and Calif CCP § 338 by concealing

18  the parties' contractually agreed six year limitation provided by NASD (National See

19  Association of Securities Dealers Inc) code 10304 together with misrepresentation, crashing

20  testimonies; the Court will also determine  whether arbitrators could decide thier juris-

21  diction and further determines whether a long term racketeering enterprise lasting for

22  longer than six years with 'continuing wrong doctrine' should be a simple common law fraud

23  CCP §338 without any statute of limitation tolling in this case moreover  the Court will

24  also determine whether genuine issue issue of material facts beyond prima facie has been

25  reached in petitioner's case.

26                          Statement of facts

27     Before petitioner opened this so called ultra service account X04 022 772  he must

28  sign a compulory agreement in the application (Exh. 1)  taken from Fidelity's answer Exh.B

                                       1

1  (attached to Chia's declaration) which was minimized by about 60% and was made unclear to

2  to be unreadable by Fidelity or its attorneys or both for fraud and conspiracy  enabling

3  them to cite state statute of limitations to falsely bar petitioner's case, HOWEVER, On the

4  right side of page 2 of exhibit 1, the words " after you have read the customer agreement

5  please sign below"can still be read and the customer agreement is shown in EXH. 2, it states

6  that the parties's dispute must be resolved by arbitration in NASD or NYSE, no court the

7  parties may use to resolve the disputes Ms. Emily Allred a Fidelity's customer service

8  staff verifies the same things ( Exh. 3 attached to petitioner's declaration) Those are

9  new evidence petitioner submits pursuant to FRCP § 60 (b) (2) and a newer Fidelity ultra

10 service account application is shown EXh. 4 with similar requirements aforesaid that once

11 such an account is opened by the customer then the customer and Fidelity are bound by the

12 matter of contract with six year time limitation to resolve thier disputes of all kinds

13 provided by both NASD and NYSE despite the state statute of limitations, petitioner also

14 submits to the Court that all Federal Circuits rule that arbitrators could not and cannot

15 determine thier own jurisdiction one of these samples is shown 957 F 2d 510. Only a

16 district court does. Court is to decide as a threshold matter whether time remains for

17 claimant to bring thier actions before the board (NASD) 995 F 2d 651,but NASD entertained

18 Fidelity to dismiss petitioner's case for running out of statute of limitations where-as

19 there were still 49 days remaining to the contractually agreed six year time limitation

20 as provided by NASD code 10304, here is the pertinent part:

21     No dispute, claim, or controversy shall be eligible for submission to arbitration

22     under this Code where six (6) years have elapsed from the occurrence or event giving

23     rise to the act or dispute, claim or controversy. This Rule shall not extend applicable

24     statute of limitations, nor shall it apply to any case which is directed to arbitration

25     by a court of competent jurisdiction.

26 The following cases were all dismissed by the Fed. Cir. Courts not NASD or NYSE for filing

27 later than six years with no tolling even there was fraud(s) because it. is contractually a

28 agreed upon limitation on period of bringing claim between the broker firm and its customers

   imposing temporal limitation not subject to equitable tolling:

2

1   a) The Ohio Co. V. Nemecek 98 F 3d 234 237.  b) Paine Webber Inc V. Hofmann 984 F2d 1372

2   (3rd Cir 1993).    C) Edward D. Jone V. Sorrells 957 F 2d 509 (7th Cir. 1992)  d) Merrill

3   Lynch, Prierce Fenner & Smith Inc. V. Cohen 62 F 3d 381 385 n. 4 (11th Cir 1995)  e)

4   Dean witter Reynold Inc V. McCoy 995 F 2d 649 651 (6th Cir. 1993). All the above cases

5   were related to the contractually agreed six year time limitation provided by either

6   New York Stock Exchange (NYSE) or National Association of Securities Dealers (NASD) which

7   the broker firms wanted its customers to compulsorily sign before opening thier account

8   and none of them was dismissed for reason that it was filed within six year time limita-.

9   tion ~~rangxxx~~ but ran out of state statute of limitation. as they all bound by the matter of

10  contract.  Petitioner filed his narrative case on May 21, 1998 (see NASD official record

11  Exh. 5 herein) claiming Fidelity's multiple frauds commencing from July 2, 1992 (see

12  Fidelity motion to dismiss (pleading 1, page 1 para 2 stating petitoner's JULY 2 92 Myland

13  sale and petitioner answer to Fidelity motion to dismiss pleading 2, 1:3-9 also stating

14  date of filing claim and date the fraud started 5/21/98 and 7/2/92 respectively, Mr.

15  micheal J Lawson testified (Hearing transcript 4:26 short sale transaction occurred 1992

16  4:27 arbitration initiated by Mr. Chia, a little less about six years ago) there was

17  some time remaining for six years meeting the requirement of the contractually agreed

18  six year time limitation above mentioned and petitioner's case should not be dismissed

19  by NASD arbitrators for running out of statute of limitations because Mr. Micheal J.

20  Lawson fraudulently concealed the contractually agreed six year time limitation by NASD

21  ~~arbitfacrber~~ by maliciously tempering petitioner's ultra service account application

22  making it blacker than black as shown in Exh. 1 herein to falsely cited state statute of

23  limitations to fraudulently bar the case(pleading 1 commencing from page 3 to 5) together

24  with Mr. Sean M. Fischer his assistant that Mr. Micheal J. Lawson further misrepresented

25  in his testimonies that" This claim was filed six years after these transactions occurred

26  and after the position of liquodation"(Hearing Transcript mid page of[11]rior to these

27  Mr. Lawson tried and tried hard to cite states' statute of limitations as applicable

28  statute of limitations to govern this case for frauds and finally the case was dismissed

3

* Hearing Transcript 4:3-32

1  (see award Exh.6)(page 2). Petitioner made a mistake to answer the chairperson that the

2  contractually agreed six year time limitation was between NASD and its members (Hearing

3  Transcript 2:30 due to Fidelity attorneys' concealing fraud and his loose memory, petitioner

4  hereby submits for a correction that it was between Fidelity and Samuel G. Chia pursuant to

5  FRCP § 60 (b) (3) actually there was such an agreement on Fidelity's file previously stated

6  and proven, although petitioner argued that even by statute of limitations which is still

7  there because of Fidelity's continuing fraudulent influences in 1994, June June 1996 and 1998 (Exh. 13)

8  in petitioner's motion for judgment and or award (pleading 3 herein) IN WHICH he also

9  raised RICO complaint to SEC in San Francisco which has four year statute of limitation and

10 subject to equitable tolling for 'continuing wrong doctrine' there were as shown but there

11 was no effect on the arbitrator panel decision. Mr. Lawson tried that petitioner owed Fidelity

12 1000 shares of Myland stock on Jul 2 1992 (hearing transcript page 5) without caring crashing

13 that Fidelity reported to IRS that petitioner had recovered it the same day (Exh. 4 in

14 petitioner motion for award(judgment) and also Lily Chan's affidavit (Exh. 2 in petitioner's

15 motion for judgment pleading 3) that she listened on the phone red extension and testifies

16 the sale was bought back the same date), petitioner did not actually owe Fidelity any Myland

17 stock in 7/2/92. Mr. Lawson made petitioner owe 2000 shares of Myland in Aug 3 1992 due

18 to Myland sprit 2 for 1 on that day on no basis as he recovered the 1000 shares of Myland

19 sale in Jul 2 92 with double proofs that Myland 8/3/92 sprit did not cause him to owe 2000

20 Myland shares, further this agent SJS had a bankruptcy record that petitioner did not want

21 to contact as a fiduciary but Fidelity concealed it for longer than 6 years without disclosin

22 to petioner. Mr. Lawson used petitioner's Exh. 1 to demonstrate without telling the arbitrato

23 why Fidelity made four different dates on Exh.1 and extended the settlement date to one

24 month normally 1 week. Fidelity short sole 2000 shares of Myland on Aug 10 92 for claimant by an unlicense

25 broker SJS ( Exh. 7 in petitioner motion for award) John Shied in Salt Lake City was not

26 licensed in California for the whole year of 1992 and Fidelity did not have 2000 Myland

27 shares in its inventory and there was no settlement in the market (Exh. 16) Fidelity failed

28 to show its inventory to U.S. SEC in San Francisco twice, the short sale was done to Fidelity

* (Hearing Transcript 2:## 35-39)        ** Hearing transcript

1  itself withholding the buy back (Hearing transcript 15;3-9    Exh.2, 2) till the price

2  was way high for corruption and malice. Petitioner submits to the court that he has proven

3  his case much beyond prima facie by viewing his pleading 3 that there were pattern misconduct

4  in July 2 1992 and Aug. 10, 1992 following continuation of fraudulent influences  causing

5  petitioner to feel that he had no case against Fidelity delaying his early filing claim

6  (Exh. 13 in his motion in NASD) that is the damages rendered by FIDELITY, Mr. Lawson also

7  admitted there were continuation of frauds by Fidelity ( H.T. mid. page of 13) CONSTITUING

8  continuing wrong doctrine applying to Fidelity that involves RICO statute of limitation

9  (4 years from June 8, 1994 to June 8, 1998), the 9th Cir. so indicated 851 F2d 275 (1988)

10  that the RICO victem may recover for new injuries inflicted within four years after RICO

11  accrual where new injuries are also original injuries because Fidelity caused him to lose

12  his chan to file earlier. By the tolling of statute, petitioner's statute of limitation is

13  still there.    The U.S. S. Ct has also made clear that defining the limits of arbitral

14  jurisdiction is generally the function of courts not arbitrators 957 F 2d 514 right side

15  that the NASD arbitrators should have refused to entertained Fidelity motion in connection

16  with arbitral jurisdiction abusing thier authority violating 9 U.S.C.A. § 10 (a) (4) to be

17  fraudulently procured by Fidelity attorneys accordingly in violation of 9 U.S.C.A. § 10 (a)

18  (1). Petitioner did correctly argued that it was the matter of contract rather than Mass.

19  or Calif. statute of limitation( Hearing Transcript 16; 8-10) that the arbitrators found

20  for fraud themselve. Arbitrator Juleann A. Thiebaut just brought nothing to come in the

21  hearing leaving the documents submitted to her at home (H.T.16;34-36 in a easy going way

22  to handle the matter. Other than this, the chair gave surprising word to petitioner that

23  Fidelity attorneys' misconducts were under protection in the situation for which petitioner

24  declares under penalty of perjury that in the status conference, she did say that although

25  she was enforcing criminal law but she should discredit instead.    Regarding the award(Exh.6

26  p. 3 that that two of arbitrators  ⬚⬚⬚⬚⬚ such as Sterling N. Frost and Thiebaut dated

27  ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚ it 12/16/98  and mailed it on Dec. 18 98 and petitioner

  recieved it in 1 to 2 days completing the delivery pursuant to 9 U.S.C.A. § 12, it states

28  Notice of motion to vacate or modify; service; stay of proceding within three months after

1   the award is filed or delivered and therefore petitioner has until March 19 1999 to file

2   his motion.

3                                   Argument

4       Pursuant to FRCP § 60 (b) (2) Petitioner's newly discovered evidence as shown in

5   Exh. 1, 2 , 3, it herein matter of contract in connection with the six year time limitation

6   to file arbitration with NASD should be accepted by the Court (see Western Hellicopter v.

7   Rogerson Aircrafts 777 F. Supp. 1543 (D. Or. 1991) and also Johnson Waste Materials v.

8   P. Ray Marshall Secretary of U.S. Labor 611 F 2d 593 (1980) Merely Negligence for longer

9   a year after judgment was entered do not preclude reformation of the judgment FRCP § 60

10  (b)(5). There is no time delay in this motion and petitioner's newly found evidence is of

11  such magnitude that production of them would have likely to change the deposition of

12  the claim 821 F 2d 875 878 (9th Cir. 1990)(quoting Coastal Transfer V. Toyota 833 F 2d

13  208 211 (9th Cir. 1987).  This Court is prayed accepting and correcting the fraudulent

14  use of states statute of limitations in a claim for a fraudulent dismissal procured by

15  Fidelity attorneys.  In view of the frauds, the court should vacate the awards and ~~xxxxx~~

16  ~~xxxxx~~ orders the NASD in 525 Market # 3rd Floor San Francisco CA 94102 to accept peti-

17  tioner's pleading as true for a reverse (see ( Lerner V. Los Angeles City Bd of Educ

18  (1963) 59 Cal 2d 382 396, 29 Cal Rptr 657 383 P 2d 97 and April Enterprses, Inc v.KTTV

19
20  147 Cal App. 3d 805; 195 Cal Rptr 421 (Oct 1983) for wrongfully use states statute of

21  limitations to dismiss petitioner's valid claim by concealing the matter of contract

22  which superceds the statute of limitation and also there was misinterpretration a RICO

23  statute to be a CCP § 338, a simple common law fraud that the natures were so complicated

24  and the length was so long, the attorneys' concealing fraud can also be considered a part

25  of Fidelity's racketeering enterprise and disciplines them prohibiting them to appear

26  in the District Court for not meeting the moral conduct required by the Court.    The

27  statute of limitation of RICO should be tolled from June 8 1994 to June 8 1998 for the

28  application of 'continuing wrong doctrine' as the 9th Cir. introduced  851 F 2d 275

    (1988). Arbitrators' jurisdiction to dismiss claim should be void and null especially

1  it was procured by fraud as proven that Ms. Emily Allred has told that in order to open

2  an ultra service account with Fidelity, the customer must sign the customer agreement binding

3  the parties to arbitrate in either NYSE or NASD which provide six year time limitation for

4  the parties arbitration that the relevant part is shown in Exh. 2 herein and the replaced

5  application is shown in Exh. 3 similar to that of the one petitioner had signed in about

6  1989-90 that Fidelity attorneys minimizing pé and making it unreadable was a conspiracy

7  to defraud enabling them to replace with states statute of limitations after its RICO act,

8  that the two cases the attorneys cited were not even security cases and they could not

9  find any citation that states statute of limitations could supercede the contractually agreed

10 six year time limitation provided by either New York Stock Exchange (NYSE) or National

11 Association of Security Dealers Inc (NASD).  By a simple look at 3:1-4 that matter of

12 contract has been used almost all broker firm to bind thier customers that Fidelity attorbeys

13 could not conceal for long.

14                              Conclusion

15    Again based upon all above, petitioner respectfully requests again that the Court is

16 to vacate and order the Arbitrators in the lower board to reverse by accepting petitioner's

17 pleading to be true.

18

19 Date March 17, 1999                        Respectfully submitted

20                                            Samuel G. Chia

21                                                In pro per.

22                    7

23

24

25

26

27

28

Samuel G. Chia
2450 Lake Street #2
San Francisco CA 94121

United States District Court

Northern District of California

Samuel G. Chia

Claimant/petitioner

V.

Fidelity Investment

Respondent /appellee

Petitioner's declarations in
support of his motion to vacate
NASD award.

I Samuel G. Chia declare under penalty of perjury that the following is true and correct
to the best of my knowledge:

(1) I am the claimant/petitioner of this case.

(2) Exhibit 1 attached herein was from respondent/appellee's answer Exh. B, I recopied
it without changing its shape attached to this motion.

(3) Exhibits 2 and 4 were from Fidelity Investment in San Francisco California.

(4) Exhibit 3 was a conversation transcript between Ms. Emily Allred and I in connection
with the conditions of opening an Ultra Service Account i n  Feb. 1999 similar to that when
I opened mine in about in 1989 to 1990. Ms. Allred was a customer service staff of Fidelity
Investment in Salt Lake City Utah

(5) Exhibits 5 and 6 were NASD official documents I recieved them from mail.

(6) I purchased a copied motion tape from NASD at $15 which was very difficult to transcribe
I was told my a lot short hand reporters that mostly they refused to transcribe because Mr.
Micheal J. Lawson was standing far from the microphone to demonstrate his exhibits tuning
his head aroud not facing the microphone, finally I got some others help transcribed it and
I rechecked it for its close accuracy before using it.  The main object was tell out the other's
side's misrepresentations and testified about statute of limitations.

(7) Pleading 1 was the motion document Fidelity attorney filed to dismiss,pleading 2 was
my answer to it and pleading 3 was my motion for judgment allowed by the chair arbitrator
and pleading 4 was the answer to it and pleading 5 was my reply. Statement of claim and

1

respondent's false answer and my supplement to my statement of claim to impeach Fidelity

answer are not incorporated as relevant to the motions for document reduction to save

court time.

Date March 17, 1999.

Samuel G. Chia

2

# Fidelity USA': Ultra Service Account
## New Account Application

**Please print your full name**

☐ Trust   ☐ Custodian   ☐ Estate   ☐ Corporation   ☐ Partnership   ☐ Sole Owner

OCO 35

Age ( )    Marital Status S    Number of Dependents

USA Account Number (if assigned)    X04-022772

Social Security or Tax ID Number    553.68.2123

**Mailing Address**

Number 161    Street Village It 25

City San Francisco    State G    Zip 5085?

Home Phone ( ) 161 421 6649    Business Phone ( )

**Bank Information**

Bank Name 1st Nationwide    07.40(0.3991

Name on Account Sauna Inc ub zoo    21020007

Bank Address Marina Street    City San Francisco

Full Signature and only    Approved



The Fidelity Ultra Service Account®

# Supplemental Information

Please review and keep for your records. Do not mail with the application.

**Customer Agreement**

Covers services and account details related to the Fidelity Ultra Service Account.

**Commission Schedules and Fee Schedule**

**Fidelity Mutual Fund Prospectus**

Fidelity Municipal Money Market Fund to consider for your core account



*Fidelity Investments*

Exh 2

If my Fidelity brokerage account is terminated either by me or you, I will promptly return all unused checks and cards to you. I understand that failure to return such checks and cards may result in a delay in complying with my instructions as to the disposition of assets in my account.

FBSI reserves the right to charge a service fee or close any account that fails to maintain minimum activity or balance requirements, and further reserves the right to close an account or remit credit balances because of insufficient investment-related activity. FBSI may periodically review my account activity, and reserves the right to charge reasonable inactivity fees or to close or change the optional account features, fees, and services or to cease paying interest on account credit balances for any reason including, but not limited to, insufficient investment activity in accordance with the regulations of the New York Stock Exchange and Securities Investor Protection Corporation. FBSI will notify me if any changes or charges are imposed. Termination will result in the cancellation of my securities account and other features or privileges.

**17. Modification.** No provision of this agreement can be amended or waived except in writing, signed by an authorized representative of FBSI. If any provision of this agreement becomes inconsistent with any present or future law or regulation of any entity having regulatory jurisdiction over it, that provision will be superseded or amended to conform with such law or regulation, but the remainder of this agreement remains in force and effect.

This agreement and its enforcement shall be governed by the laws of the Commonwealth of Massachusetts; shall cover individually and collectively all accounts that I may open or reopen with Fidelity; and shall insure to the benefit of Fidelity's successors and assigns, whether by merger, consolidation, or otherwise. Fidelity may transfer my account to your successors and assigns, and this agreement shall be binding upon my heirs, executors, administrators, successors, and assigns.

## Arbitration

### 18. PRE-DISPUTE ARBITRATION AGREEMENT.
This account is subject to the arbitration rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. I am aware of the following:

a. Arbitration is final and binding on the parties.

b. The parties are waiving their right to seek remedies in court, including the right to jury trial.

c. Pre-arbitration discovery is generally more limited than and different from court proceedings.

d. The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modi-

fication of rulings by the arbitrators is strictly limited.

e. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree that all controversies that may arise between us concerning any order or transaction, or the continuation, performance, or breach of this or any other agreement between us, whether entered into before, on, or after the date this account is opened, shall be determined by arbitration before a panel of independent arbitrators set up by either the New York Stock Exchange, Inc. or National Association of Securities Dealers, Inc. as I may designate. If I do not notify you in writing of my designation within five days after I receive from you a written demand for arbitration, then I authorize you to make such designation on my behalf. I understand that judgment upon any arbitration award may be entered in any court of competent jurisdiction.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (a) the class certification is denied; or (b) the class is decertified; or (c) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

## Margin Account Agreement

### To: Fidelity Brokerage Services, Inc. and National Financial Services Corporation (Collectively, "Fidelity" or "you")

My margin account will be established with the Automatic Repayment option. The settlement of securities purchases and other debit items (such as the Fidelity Visa® Gold Check Card, checks and balances transfer transactions) in the Fidelity Ultra Service Account comes first from available core balance and second from any margin availability. Any cash or money market fund balance in my core account will be automatically applied to my margin debit balance.

I may select the optional repayment option if I enhance my margin feature with Fidelity Accessline.℠ The margin availability is accessed for trade settlement in margin account prior to the core account. This method allows the purchase of securities to settle using margin availability while keeping a balance in the core account at the same time. Debit items such as Fidelity Visa® Gold Card

Exh. 2

Conversation between Fidelity Investment customer service staff Emily Allred
and Samel G. Chia about customeragreement to arbitration in NASD or NYSE before
Ultra Service account can be opened with Fidelity.  Exhibit 3

1

2   Thank you for calling Fidelity.  For quote Balance and mutual Fund   . .  press 1. To
Conduct exchanges trade... .. press 2. .  . . . . . . .. . . All conversation with representati

3   are recorded for your protection.

4   Chia   I also record the conversation

5   Allred   Good morning this is Emily May I help you ?

6   Chia   May I know who is speaking?      Allred   This is Emily with Fidelity Investment

7   Chia   Your name please.               Allred   Emily

8   Chia   Your last name please           Allred   Allred A L L R E D

9   Chia   You in customer Service right ?   Allred   Yes I am.

10  Chia   Please tell if I want open an Ultra Service Account marginal Do I have to sign

11        agreement with Fidelity that the future dispute must be resolved in NASD or NYSE ?

12    You understand me ?        Allred   You want to open an Ultra Service account?

13  Chia   Yes  Do I have sign agreement?      Allred   Yes You do.

14  Chia   That I must agree to resolve the future dispute in NASD or NYSE ?

15  Allred   For dispute       Allred   Chia  For future dispute ?

16  Allred   Do you have to file a dispute?   ~~Chia... future dispute~~

17  Chia   No if there will be future dispute  Do I have to agree to arbitration with NYSE or

18       NASD ? You understand me ?      Allred   Arbitration and okay

19  Chia   You don t understand me     Allred I see what you are saying  you have to sign

20     agreement to arbitration with Fidelity?     Chia  Yes     Allred   Okay

21  Chia   Yes      Allred Let me see check what is involved with that customer agreement Can

22  you hold just for a moment ?   Chia  Yes    Chia  Yes     Allred  Thanks for holding when

23   you do sign Ultra Service type with the nature against Fidelity, you agree to arbitration

24  Chia   In NYSE or NASD right?      Allred   That is right?     Chia   It must be right?

25  Allred   Yes  that is what you agree when you sign.

26  Chia   What city you are located please    Allred   I am in Salt Lake City Utah

27  Chia   You are in Salt Lake City      Allred   Yes         Chia   That means the future

28  dispute cannot be resolved in court     Allred   That is right correct.

Exh.  3

# Fidelity Ultra Service Account®

**Please print your information in ink and return your completed application to us in the enclosed pre-paid envelope.**

For help completing this application, or for a Business, Trust, Brokerage IRA or Keogh Account Application, call us anytime at 1-800-544-7272.

## 1: Please tell us how we should establish your account

### Account registration:

| Individual | Joint Tenants – Rights of Survivorship¹ | Custodial (UGMA/UTMA) | Estate² |
|---|---|---|---|
| | Tenants in Common¹ | Under the (state) _____ Uniform Gifts/Transfer to Minors Act | Other Non-Trust Fiduciary: |
| | Community Property¹ | | _____ |

### Name:

| Account Owner/Minor Name (first, MI, last): | Joint Owner/Custodian Name (first, MI, last): |
|---|---|
| | |

### How to reach you:

| Permanent Street Address (no P.O. Boxes): | City | State | Zip |
|---|---|---|---|
| | | | |
| Mailing Address (if different from above): | City | State | Zip |
| | | | |
| Evening Phone (Home): ( ) | Daytime Phone (Work): ( ) | | |

¹If you are establishing a joint account and do not check a box, the account will be registered as joint tenants with rights of survivorship. Types of joint ownership are governed by the laws of your state of residence. If you need more information about which are appropriate in your state, please ask your state tax officials or financial advisor. If joint owner has a different address, please include with this application.

²List the Estate name as the owner and the Executor's name as the joint owner. These accounts require a court appointment (dated within 60 days) with this application and may require other paperwork.

## 2: To establish an account, we are required to obtain the following information

| | Account Owner/Minor | Joint Account Owner/Custodian |
|---|---|---|
| **Social Security or Taxpayer ID Number:*** | | |
| **Date of Birth:** (month/day/year) | | |
| **Citizenship**    Country of citizenship: | U.S.    Other _____ | U.S.    Other _____ |
| Country of tax residence: | U.S.    Other _____ | U.S.    Other _____ |
| **Employment Status:** | Employed    Not employed    Retired | Employed    Not employed    Retired |
| **Occupation:** (If retired or not employed, indicate source of income) | | |
| **Employer's Name and Address:** | | |
| **Affiliations:** • Are you affiliated with or employed by a stock exchange or member firm of an exchange or the NASD, or by Fidelity? | Yes, with Fidelity. Yes, with _____, (and I have included a letter of approval from my Compliance Officer).** | Yes, with Fidelity. Yes, with _____, (and I have included a letter of approval from my Compliance Officer).** |
| • Are you a director, 10% shareholder, or policy-making executive of a public company? | Yes. Trading symbol: _____ Company: _____ | Yes. Trading symbol: _____ Company: _____ |

*The Social Security Number/Taxpayer ID number for account owner/minor is used for tax reporting purposes.

**If yes, you must include a letter of account approval from your Compliance Officer with your account application and indicate your employer's company name and address above. Notification of your intent to open an account will be sent to your employer in accordance with the current regulations.

## 3: Please supply the following information about your financial profile

We are required by industry regulations to obtain this information. For joint accounts, please provide combined information. For UGMA/UTMA, please provide custodian's information.

| Investment Objective (choose one) | Annual Income (from all sources) | Estimated Net Worth (excluding home and farm) | Estimated Liquid Net Worth | Federal Tax Bracket |
|---|---|---|---|---|
| Preservation of Capital | Under $20,000 (Amount _____) | Under $30,000 (Amount _____) | Under $15,000 (Amount _____) | 15% |
| Income | $20,000-$50,000 | $30,000-$50,000 | $15,000-$50,000 | 28% |
| Capital Appreciation | $50,001-$100,000 | $50,001-$100,000 | $50,001-$100,000 | Over 28% |
| Speculation | Over $100,000 | $100,001-$500,000 | $100,001-$500,000 | |
| Trading Profits | | Over $500,000 | Over $500,000 | |

**Bank Reference:**

| Bank Name | Bank Account Number | Branch/City and State | Zip |
|---|---|---|---|
| | | | |

## 4: Indicate where you would like cash placed between investments

Please refer to the sales brochure for more details on the core account.

**Taxable Cash Account:**
an interest-bearing credit balance

**Fidelity Municipal Money Market Fund [010]**

Fidelity California Municipal Money Market Fund [097]

Fidelity Connecticut Municipal Money Market Fund [418]

Fidelity Massachusetts Municipal Money Market Fund [074]

Fidelity Michigan Municipal Money Market Fund [420]

Fidelity New Jersey Municipal Money Market Fund [417]

Fidelity New York Municipal Money Market Fund [092]

Fidelity Ohio Municipal Money Market Fund [419]

## 5: Indicate how you will fund your new account

The minimum initial deposit required to open this account is $5,000 in cash and/or eligible securities. Orders placed in a new account require 100% of any initial trade's value. Fidelity does not accept cash deposits, third-party, foreign, or travelers checks.

I've enclosed a check for $_____ made payable to **Fidelity Brokerage Services, Inc.** for deposit into my core account.
**OR**

I've enclosed a check for $_____ made payable to **Fidelity Brokerage Services, Inc.** and wish to invest some or all of this initial deposit directly into a mutual fund as indicated below. I have read the prospectus(es) for these fund(s). The fund minimum will apply. Fidelity has the right to reject specific purchase orders for mutual funds. All other security purchases must be placed through a Fidelity Representative or through one of Fidelity's electronic channels. You may only complete this section if you are depositing a check.

| Fund Family | Fund Name | Fund Symbol | Dollar Amount |
|---|---|---|---|
| _____ | _____ | _ _ _ _ _ | $ _____ , _____ . _____ |
| _____ | _____ | _ _ _ _ _ | $ _____ , _____ . _____ |

I am transferring* all shares or positions from one or more of my Fidelity non-retirement mutual fund or brokerage account(s). Please transfer all Fidelity mutual funds under the following customer T-account number or all securities within the following brokerage account number. For partial transfers, please include a letter signed by all owners indicating the position(s) and amount(s) to be transferred from the account indicated below.

**T-** _____    **Brokerage Account Number:** _____

Note that you may need to complete additional paperwork if you wish to transfer certain features, such as Fidelity Automatic Account Builder, from your existing account to your new account.

I am transferring* money from another firm and have included a Transfer of Assets form.

I have enclosed certificates endorsed exactly as they are registered on each face and have written "National Financial Services Corporation" on the line between "appoint" and "attorney." The number of certificates enclosed is _____.

*Registrations on your account must be identical when transferring or exchanging funds or securities. If they are not, attach a letter or authorization signed by all original account owners with the signatures guaranteed.

Exh 4

## 6: Overdraft Protection and Margin Credit
You will automatically be considered for this feature unless you request otherwise.

This borrowing feature allows you to use your eligible securities or mutual funds as collateral for overdraft protection, for the purchase of additional securities, as a low-cost loan alternative, or for debt consolidation. Addition of this feature is subject to Fidelity's approval and may require a review of your credit history. Margin borrowing involves additional risks and is not suitable for all investors. Your signature on this application acknowledges that you have read the margin agreement section of the Customer Agreement and agree to its terms. **Not available on UGMA/UTMA, Estate or other Fiduciary accounts.**

**I DO NOT** wish to have the ability to margin securities in my account.

## 7: Please select the optional account features that meet your needs
By selecting the features below, I acknowledge I have read and agree to the terms set forth in the Customer Agreement.

| STANDARD ACCOUNT FEATURES | Please check box(es) |
|---|---|
| **Mutual Fund Distributions:** All distributions from mutual funds held in your account will be reinvested in the fund unless you check at right. | No, direct all mutual fund distributions to the core account established in Section 4. |
| **Equity Dividend Reinvestment:** All dividends and capital gain distributions from your eligible domestic securities and closed-end mutual funds will be directed to the core account unless you check at right. Only certain domestic stocks and closed-end funds held in a Fidelity brokerage account are eligible for dividend reinvestment. | Yes, reinvest all eligible security dividends in their respective securities. I can also selectively reinvest in such individual securities by calling a Fidelity representative. |
| **RealTime Research℠:** RealTime Research is a convenient way to receive a broad array of objective third-party investment information. | Yes, I wish to enroll in RealTime Research. |
| **Bank Transfer Services** *(electronic links to your bank account):* Bank Wire moves money in one business day. A $15 fee will apply to each wire redemption. **Fidelity MoneyLine®** moves money free-of-charge in two business days. In some cases we may need to send you additional paperwork before the Bank Wire feature can be established. Your bank may charge a fee. | Yes, I wish to establish:  Bank Wire          MoneyLine  I will also attach a voided check to this application. |

**CASH MANAGEMENT PACKAGE:** *If you wish to establish cash management features and you are opening your account with a minimum of $10,000, you may also select one or more of the following:*

| | |
|---|---|
| **Check Card or Charge Card:** You can use either of these cards for cash advances or purchases wherever Visa is accepted. The Fidelity Visa® Gold Check Card is available free of charge, and transactions are deducted from your core account daily. The Visa® Gold Charge Card is available for $24 per year and provides you with up to a 30-day interest-free grace period before purchases are deducted from your core account. Both cards are subject to approval by the issuer and will involve a review of your credit and, in some cases, employment history. | Please select only one:  Check Card          Charge Card application  Joint accounts will receive two cards. |
| **Unlimited Checkwriting:** You may establish the checkwriting feature by signing the attached signature card. You will receive unlimited checkwriting privileges and expense coding. Fidelity will keep all cancelled checks. | Yes, I wish to establish checkwriting and have indicated so by completing the attached signature card. |
| **Fidelity AccessLine℠:** Your margin credit feature can be enhanced by adding AccessLine, a feature that combines the borrowing power of margin with the easy access of a Fidelity Visa® Gold Check Card to consolidate credit card balances and other loans, and to choose the method of repayment that suits your needs. If approved, you will receive a check card. To qualify for AccessLine you must also qualify for margin (see Section 6). | Yes, I wish to enhance my margin feature by (FAX) adding AccessLine.  I will receive more details on AccessLine once my account is established and approved for margin. |
| **Bill Payment:** The Fidelity Interactive Bill Payment Service lets you schedule your bill payments electronically using your personal computer (PC) or your touch-tone telephone. Your first three months are free. Thereafter, a monthly fee will apply. | Yes, I wish to establish the Bill Payment Service. Please send me the information I need to schedule my bill payments.  PC and Touch-tone phone |

Check Card, Bill Payment and AccessLine features are not available on Custodial accounts.

4x4

## 8: You may also request additional information on the following

| | | |
|---|---|---|
| FAAB allows you to set up monthly or quarterly transfers from your bank account to your core account or to a mutual fund position within your brokerage account. | Direct Deposit (from non-government employer)<br><br>Direct Deposit (from government) | Options Trading<br><br>Trading Authorization<br><br>Full   or       Limited |

## 9: For Active Traders who want to apply for special pricing, please complete the section below

The special benefits of Active Trader Pricing and Gold Circle℠ membership are available to active traders who maintain a minimum account equity of $20,000 and who trade a minimum of 36 and 72 trades per year, respectively. Active Trader Pricing and Gold Circle membership requires Fidelity's approval and, if approved, eligibility will be reviewed periodically after enrollment. To apply, you must (1) ATTACH copies of your past three months' statements from your existing brokerage firm(s) to demonstrate your trading activity; AND COMPLETE the following information.

Current value of your securities portfolio:   $ _____
Average margin debit balance you maintain (if any):   $ _____
Number of stock and option transactions you made during the last year:   _____
Amount of commissions paid during the last year:   $ _____

If you qualify, we will establish your account with Active Trader Pricing or Gold Circle membership and will notify you by letter. If you do not qualify, we will establish your account with Fidelity's discount commission schedule.

## 10: Signature

**Each owner and custodian/fiduciary must READ the Customer Agreement and SIGN this section in ink.**

I hereby request Fidelity Brokerage Services, Inc., and National Financial Services Corporation (collectively "Fidelity") to open a Fidelity Ultra Service Account in the name(s) listed as account owner(s) on this application.

- I acknowledge that I have read, understood, and agree to the terms and conditions set forth in the Customer Agreement. I am at least 18 years of age and of full legal age in the state in which I reside. I understand that you will supply my name to issuers of any securities held in my account so I might receive any important information regarding them, unless I notify you in writing not to do so. I understand that it is my responsibility to read the prospectus for any mutual fund into which I purchase or exchange.

- I understand that the Customer Agreement and its enforcement shall be governed by the laws of the Commonwealth of Massachusetts. It shall cover individually and collectively all accounts which I may open or reopen with Fidelity. It shall inure to the benefit of Fidelity's successors and assigns, whether by merger, consolidation, or otherwise. Fidelity may transfer my account to your successors and assigns, and this Agreement shall be binding upon my heirs, executors, administrators, successors, and assigns.

- The following clause referring to lending of securities applies only to those accounts eligible and approved for margin. I understand that UGMA/UTMA, estate and other fiduciary accounts cannot use margin. I hereby authorize Fidelity to lend, hypothecate, or re-hypothecate, separately, or with the property of others, either to yourselves or to others, any property you may be carrying for me on margin. This authorization applies to all my accounts you carry and shall remain in force until you receive written notice of revocation at your main office in Boston, MA.

- If I am a U.S. citizen or resident alien, I certify under penalties of perjury that: (1) the Social Security or taxpayer identification number provided above is correct; and (2) I am not subject to IRS backup withholding because: (a) I am exempt from backup withholding; or (b) I have not been notified by the IRS that I am subject to backup withholding; or (c) I have been notified by the IRS that I am no longer subject to backup withholding. (Cross out item 2 if it does not apply to you.)

- If I am a non-resident alien, I certify under penalties of perjury that I am not a U.S. citizen or resident alien, and that I am an "exempt foreign person" as defined under IRS regulations.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

- I agree to be bound by the terms and conditions set forth in the Customer Agreement as are currently in effect and as may be amended from time to time. This account is governed by a predispute arbitration clause, which is found in Section 18 of the Customer Agreement. I acknowledge receipt of the predispute arbitration clause.

| SIGNATURE OF ACCOUNT OWNER | Date (month, day, year) | SIGNATURE OF JOINT ACCOUNT OWNER/CUSTODIAN | Date (month, day, year) |
|---|---|---|---|
| X | | X | |

Fidelity Investments is a registered trademark owned by FMR Corp. Fidelity Brokerage Services, Inc., National Financial Services Corporation, and Fidelity Distributors Corporation are each direct or indirect subsidiaries of FMR Corp. Accounts are carried with our affiliate, National Financial Services Corporation, a member of the New York Stock Exchange and other principal exchanges. Fidelity Investments, P.O. Box 5000, Cincinnati, OH 45273-8699

| For Fidelity Use Only | ☐ Cash | ☐ Margin | ☐ ATP |
|---|---|---|---|
| Account # Assigned | Reg. Rep. Signature | | Date |
| Approving Manager's Signature | | Date | |

37030.001    Fidelity Ultra Service Account is a service of Fidelity Brokerage Services, Inc. Member NYSE, SIPC.    BASSUSA-APP-998
1.706268.101

   7001183



# ARBITRATOR'S EXHIBIT #1

DATE: 9-11-98                UPDATED: _____

CASE NAME: Samuel G. Chia vs. Fidelity Investments     CASE #: 98-02028
a.k.a Fidelity Brokerage Services

The documents on this list comprise Arbitrator's Exhibit #1.  If this list is not accurate, please contact the NASD immediately.
Arbitrators must read all documents in Arbitrator's Exhibit #1 prior to hearing.

| | | | | |
|---|---|---|---|---|
| Claimant(s)   (CL) | []Yes  No[] | Samuel G. Chia | | 5/21/98 |
| Respondent 1   (R1) | []Yes  No[] | Fidelity Brokerage Services, Inc. | | 8/6/98 |
| Respondent 2   (R2) | []Yes  No[] | | | |
| Respondent 3   (R3) | []Yes  No[] | | | |
| Respondent 4   (R4) | []Yes  No[] | | | |
| Respondent 5   (R5) | []Yes  No[] | | | |
| Respondent 6   (R6) | []Yes  No[] | | | |
| Respondent 7   (R7) | []Yes  No[] | | | |
| Respondent 8   (R8) | []Yes  No[] | | | |
| Respondent 9   (R9) | []Yes  No[] | | | |

| | | | |
|---|---|---|---|
| ✓ | Statement of Claim | Statement of Answer | ✓ |
| | Amended Statement of Claim | Joint Answer | |
| ✓ | Amendment to Claim | Counterclaim | |
| ✓ | Supplement to Claim  6/16/98 | Joint Answer and Counterclaim | |
| | Clarification of Claim | Answer and Third-Party Claim | |
| | Reply to Counterclaim | Answer, Counterclaim and Third Party | |
| | Reply to Request for Attorney's fees | Cross-claim | |
| | Motion | Request for Clarification | |
| | Motion | Motion | |
| | Reply to | Motion | |
| | Reply to | Reply to | |
| | | Reply to | |
| | | | |
| | | | |
| | Exhibit Binder Attached to: | Exhibit Binder Attached to: | |
| | | | |

AWARD
NASD REGULATION, INC

In the matter of the Arbitration Between

Name of Claimant(s)

Samuel G. Chia

v.

Arbitration No.
98-02028

Name of Respondent(s)

Fidelity Brokerage Services

REPRESENTATION

For Claimant:        Samuel G. Chia
                     San Francisco, California

For Respondent:      Michael J. Lawson, Esq.
                     Sean M. Fischer, Esq.
                     Steefel, Levitt & Weiss
                     San Francisco, California

CASE INFORMATION

Statement of Claim filed:  June 2, 1998

Claimant's Submission Agreement signed:    May 21, 1998

Statement of Answer filed:  August 6, 1998

Respondent's Submission Agreement signed:  August 6, 1998

HEARING INFORMATION

Pre-hearing telephone conferences were held as follows:

October 26, 1998          -          1 session (full panel)
November 20, 1998         -          1 session (Chair only)

A motions hearing was held in San Francisco, California, on December 14, 1998, and lasted one session.

## CASE SUMMARY

Claimant alleged fraud, misrepresentation and breach of fiduciary duty arising out of his short sale in July 1992 of 1000 shares of Mylan common stock and his subsequent efforts to repurchase the shares necessary to cover the short sale. Claimant also alleged that Respondent had employed unlicensed brokers in 1992.

Respondent denied the allegations of wrongdoing, and stated that Claimant followed a pattern of selling short on margin, and that Claimant's losses were the result of the shorted stock's price rise, as well as a 2-for-1 stock split, rather than any wrongful actions on its part. Respondent further stated that it had never employed unlicensed brokers. Respondent asserted that all Claimant's claims were barred by the applicable statutes of limitations.

## RELIEF REQUESTED

Claimant requested damages of $129,588.65, plus punitive damages of $259,173.30.

Respondent requested dismissal of all claims.

## AWARD

At the December 12, 1998, motions hearing, the panel heard oral argument on Claimant's Motion for Summary Award and on Respondent's Motion to Dismiss pursuant to the applicable statutes of limitations.

After considering the pleadings, the briefs and the oral arguments of the parties, the arbitrators made the following determinations:

1. Claimant's Motion for Summary Award is denied.

2. Respondent's Motion to Dismiss is granted.

#98-02028

Exh. 6

## FORUM FEES

Pursuant to Section 10332 of the Code of Arbitration Procedure, the NASDR shall retain Claimant's $200.00 non-refundable filing fee as well as Respondent's $1,500.00 member surcharge.

Forum fees are assessed as follows:

Total fees

| | |
|---|---|
| 1 pre-hearing telephone conference @ $300/session | $   300.00 |
| 1 pre-hearing telephone conference @ $750/session | $   750.00 |
| 1 hearing session @ $750/session | $   750.00 |
| | $ 1,800.00 |

| | | |
|---|---|---|
| Claimant's one-half share | | $   900.00 |
| Credit for deposit | | ($   750.00) |
| | Balance due: | $   150.00 |

| | |
|---|---|
| Respondent's one-half share | $   900.00 |

Fees are payable to the National Association of Securities Dealers Regulation, Inc.

Concurring Arbitrators Signatures:                                    Public/Industry


_[signature]_
Beverly E. Narayan                                                          Public
Presiding Chairperson


_____                                          Public
Sterling N. Frost


_____                                          Industry
Juleanne A. Thiebaut


*page 3 of 3*                                                        *#98-02028*

## FORUM FEES

Pursuant to Section 10332 of the Code of Arbitration Procedure, the NASDR shall retain Claimant's $200.00 non-refundable filing fee as well as Respondent's $1,500.00 member surcharge.

Forum fees are assessed as follows:

Total fees

| | | |
|---|---|---|
| 1 pre-hearing telephone conference @ $300/session | $ | 300.00 |
| 1 pre-hearing telephone conference @ $750/session | $ | 750.00 |
| 1 hearing session @ $750/session | $ | 750.00 |
| | | $ 1,800.00 |

| | | |
|---|---|---|
| Claimant's one-half share | $ | 900.00 |
| Credit for deposit | ($ | 750.00) |
| Balance due: | $ | 150.00 |

| | | |
|---|---|---|
| Respondent's one-half share | $ | 900.00 |

Fees are payable to the National Association of Securities Dealers Regulation, Inc.

Concurring Arbitrators Signatures:                    Public/Industry

                                                      Public

---
Beverly E. Narayan
Presiding Chairperson

*Sterling N. Frost*    12/16/98                       Public
Sterling N. Frost

                                                      Industry
---
Juleanne A. Thiebaut

*page 3 of 3*                                         *#98-02028*

Exh. 6

## FORUM FEES

Pursuant to Section 10332 of the Code of Arbitration Procedure, the NASDR shall retain Claimant's $200.00 non-refundable filing fee as well as Respondent's $1,500.00 member surcharge.

Forum fees are assessed as follows:

Total fees

| | |
|---|---|
| 1 pre-hearing telephone conference @ $300/session | $ 300.00 |
| 1 pre-hearing telephone conference @ $750/session | $ 750.00 |
| 1 hearing session @ $750/session | $ 750.00 |
| | $ 1,800.00 |

| | | |
|---|---|---|
| Claimant's one-half share | | $ 900.00 |
| Credit for deposit | | ($ 750.00) |
| | Balance due: | $ 150.00 |

| | |
|---|---|
| Respondent's one-half share | $ 900.00 |

Fees are payable to the National Association of Securities Dealers Regulation, Inc.

Concurring Arbitrators Signatures:                         Public/Industry


_____                           Public

Beverly E. Narayan
Presiding Chairperson


_____                           Public

Sterling N. Frost

Juleanne A. Thiebaut                12/16/98              Industry



=0.55=
U.S. POSTAGE
PB METER
7027603

DEC 18'9 8



**NASD**
REGULATION

An NASD Company

NASD Regulation, Inc., Dispute Resolution
525 Market Street, Suite 300
San Francisco, CA 94105

Exh. 7

*In Summary*

## I

Claimant has proven his case against respondent's fakes promise by SLM misrepresentations also riding violation for extortion also by SLM (Brook Mc Elmurry in Salt Lake), misrepresented the executed documents by its dallas branch, nondisclosures by respondent's head office in Boston, fraud completions also by Fidelity's head office in Boston, trapping and inducing false honesty on claimant on a 2nd fraud also by those offices which were shown in claimant motion for awards 1:22-5:22 Part B together with the related exhibit evidence which respondent offers no dispute and cannot dispute the factual materials covering the 1st 2000 shares of Nyland fraud and also the 2nd 2000 shares of Nyland fraud by respondent Fidelity there claimant's genuine issue of material fact exists for the whole case. Although respondent unreasonably argues about some unimportant things compulsorily without affecting the merit of claimant's claim e.g. hearsay, names, new evidence new intention of law indicating respondent's lack of knowledge of NASD evidence rules and procedures that claimant should prevail in the motion.

## II

Respondent initiated its suicide motion to dismiss by wrongfully introducing states' statute of limitations attempting to intervene NASD Time Limitation which is matter of contract while statute of limitations is not they are two different things and no party agreed to intervene that it does not agree to intervene for shortening the Time Limitation to be barred even it could. The statute of limitations is subject to tolling till 2001 March 5 because of respondent's continued mail frauds for three years as argued in claimant's opposition, statute limitations could not and cannot infer intervene NASD Time Limitation for respondent to be away from from various frauds victimizing claimant. NASD Time Limitation does not cit above statute of limitations but the contract makes it so respondent's inconsistent conduct violating the California action of limitation to have caused it given up the right of its defense and is defeated hereof.

## III

Claimant have been caused to be handicapped by respondent FIDELITY for its misconduct in frauds depriving all the monies in his account wrongfully and have been suffering from extra income due to emotional distress that very often even he took the pills he still could not sleep preventing him from taking regular employment forever and therefore an emotional distress compensation should also be considered by the panel for justice.

*additional*

## I

Claimant has proven his case against respondent's false premise by SSM misrepresentations i.e. aiding violation for extortion also by SLM (Brook Mc Elmurry in Salt Lake), misrepresented the executed documents by its dallars branch nondisclosures by respondent's head office in Boston, fraud completions also by Fidelity's head office in Boston, trapping and inducing false honesty on claimant on a 2nd fraud also by those offices which were shown in claimant motion for awards 1:22-5:22 Part B together with the related exhibit evidence which respondent offers no dispute and cannot dispute the factual materials covering the lst 2000 shares of Myland fraud and also the 2nd 2000 shares of Myland fraud by respondent fidelity where claimant's genuine issue of material fact exists for the whole case. Although respondent unreasonably argues about some unimportant things compulsarily without affecting the merit of claimant's claim e.g. hearsay,names, new evidence new intention of law indicating respondent's lack of knowledge of NASD evidence rules and procedures that claimant should prevail in the motion.

## II

Respondent initiated its suicide motion to dismiss by wrongfully introducing states' statute of limitations attempting to intervene NASD Time Limitation which is matter of contract while statute of limitations is not they are two different things and no party can be forced to intervene that it does not agree to intervene for shortening the time limitation to be barred even it could. the statute of limitations is subject to tolling till 2001 March 5 because of respondent's continued mail frauds for three years as argued in claimant's opposition, statute limitations could not and cannot infer intervene NASD Time Limitation for respondent to be away from various frauds victimizing claimant. NASD Time Limitation does not sit above statute of limitations but the contract makes it so respondent's inconsistent conduct violating the California action of limitation to have caused it given up the right of its defense and is defeated hereof.

## III

Claimant have been caused to be handicaped by respondent FIDELITY for its misconducts in frauds depriving all the monies in his account wrongfully and have been suffering from severe insomnia due to emotional distress that very often even he took the peels he still could not sleep preventing him from taking regular employment forever and therefore an emotional distress compensation should also be considered by the panel for justice.

Editional
Chief