# EXHIBIT 6



# STEEFEL
# LEVITT
# & WEISS

A PROFESSIONAL CORPORATION

ONE EMBARCADERO CENTER • THIRTIETH FLOOR • SAN FRANCISCO, CALIFORNIA 94111-3719
TELEPHONE: (415) 788-0900 • FACSIMILE: (415) 788-2019

E-Mail: fischers@steefel.com

November 16, 1998

**VIA HAND DELIVERY**

Virginia Hall
National Association of Securities Dealers, Inc.
525 Market St.
San Francisco, CA 94105

       Re:    ***Chia v. Fidelity Brokerage Services***
                **NASD Case No. 98-02028**

Dear Ms. Hall:

       In accordance with the October 26, 1998 Preliminary Hearing Order in this matter, Respondent Fidelity Brokerage Services ("Fidelity") hereby moves to dismiss the claims of Claimant Samuel G. Chia pursuant to the applicable statutes of limitations. Please provide copies of this motion to the arbitrators for their review.

## BACKGROUND

       This arbitration arises from a short sale of Mylan Laboratories, Inc. ("Mylan") by Claimant on July 2, 1992. On that date, Claimant placed three orders with Fidelity. First, Claimant placed an order to sell short 1,000 shares of Mylan at $39.75. Second, Claimant cancelled that order. Third, Claimant placed an order to sell short 1,000 shares of Mylan at $39.875 and placed a good-till-cancelled order to repurchase 1,000 shares at a limit price of $36, in an attempt to cover the open short position. Unfortunately for Claimant, Mylan never declined to $36 in July. Thus, Claimant's July 1992 monthly statement showed that Claimant had an open short position of 1,000 shares of Mylan, and an open order to purchase 1,000 shares of Mylan at a limit price of $36.[1] (Attached hereto as Exhibit A is a copy of Claimant's monthly statement for the period June 27 – July 31, 1992.)

       Mylan stock split two-for-one on August 3, 1992, thereby doubling Claimant's open short position to 2,000 shares. In an apparent effort to cover his increasingly unprofitable short position, on August 10, 1992 Claimant placed an order to sell short an additional 2,000 shares of Mylan at a limit price of $22.75 ($45.50 pre-split, for a total open short position of

---

[1]    On July 31, 1992, Mylan closed at $43.50.

• SAN FRANCISCO, CALIFORNIA •             • STAMFORD, CONNECTICUT •




Virginia Hall
November 16, 1998
Page Two

STEEFEL
LEVITT
& WEISS

A PROFESSIONAL CORPORATION

4,000 shares), and placed an order to purchase 4,000 shares of Mylan at a limit price of $20 ($40 pre-split). On August 28, 1992, Mylan closed at $28.75, never reaching the $20 limit purchase price. Claimant's open positions -- a 4,000 share short and a 4,000 share limit purchase order -- were reflected on his August monthly statement. (Attached hereto as Exhibit B is a copy of Claimant's monthly statement for the period August 1 - August 28, 1992.)

Because of the increasing debit in Claimant's margin account caused by his out-of-the-money short position in Mylan, on August 27, 1992 Fidelity exercised its right to execute a forced margin buy-in of 900 shares of Mylan at $24.375, thereby reducing the open short position to 3,100 shares. (Attached hereto as Exhibit C is a copy of Claimant's monthly statement for the period August 29 - September 25, 1992. The settlement date for the forced margin buy-in was September 3, 1992.) At the end of September, Claimant remained short 3,100 shares of Mylan, as reflected on his monthly statement for that period.

During the months of October and November, although Claimant continued to trade his account, he did not trade Mylan and his open short position remained intact. On December 8, 1992, Claimant purchased 725 shares of Mylan at $29.50 (reducing his open short position to 2,375 shares), and changed the open order to one to purchase 2,375 Mylan shares at a limit of $24.375. On December 31, 1992, Mylan closed at $31.50, again failing to decline to Claimant's limit price of $24.375. As a result, as of December 31, 1992, Claimant remained short 2,375 shares of Mylan, as reflected on his monthly statement for that period. (Attached hereto as Exhibit D is a copy of Claimant's monthly statement for the period November 28 - December 31, 1992.) As of that date, Mylan stock closed at $31.50 ($63 pre-split).

Claimant continued unsuccessfully to attempt to cover his losing position through February 1993. First, on January 22, 1993, Claimant changed his open order to one to buy 2,375 shares of Mylan at a limit of $33.375, All-or-None. (Attached hereto as Exhibit E is a copy of Claimant's monthly statement for the period January 1 - January 29, 1993.) As of January 29, 1993, Mylan closed at $35.75, again failing to decline to Claimant's limit price of $33.375. Finally, on February 5, 1993, Claimant closed his short position by purchasing 2,375 Mylan shares at the market price of $35.25.

In sum, Claimant received proceeds of $84,985.32 from the Mylan short sales in July and August 1992, but paid $127,193.84 to cover his short position, for a net loss of $42,208.52.

Based upon the foregoing facts, Claimant alleges that Fidelity defrauded him in connection with his short sale of Mylan in July 1992 and that Fidelity breached a fiduciary duty owed to Claimant. Although these claims are wholly without merit, they should be dismissed for the further reason that they are untimely and barred by the applicable statutes of limitations.

Virginia Hall
November 16, 1998
Page Three

STEEFEL
LEVITT
& WEISS

A PROFESSIONAL CORPORATION

## ARGUMENT

I.    CLAIMANT'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS

The longest limitations period applicable to this case is 3 years. Claimant was put
on notice of his claims, and the applicable statutes of limitations began to run, no later than
September 1992, when Claimant admits that he received a monthly statement for the period
August 1 – August 28, 1992 on September 10, 1992 and that he discovered Fidelity's allegedly
"fraudulent activities" at that time. (Statement of Claim, 4:17-18.) Therefore, Claimant was put
on notice of his claims, and the applicable statutes of limitations began to run, no later than
September 10, 1992. However, Claimant did not file this case until May 21, 1998, nearly six
years after he had notice of his claims.

Claimant does not dispute that under both Massachusetts[2] and California law, the
statutes of limitations applicable to Claimant's claims for fraud and breach of fiduciary duty is
three years. *Mass. Gen. Laws ch. 260, § 2A; Cal. Code Civ. Proc. § 338(d)*. The statutes of
limitations began to run when Claimant discovered, or should have discovered, the facts giving
rise to his claims. *McGuinness v. Cotter, 412 Mass. 617, 622 (1992); April Enterprises v.
KTTV, 147 Cal.App.3d 805, 826 (1983)*. In addition, the running of a statute of limitations is *not*
dependent on Claimant's knowledge of every relevant fact or legal theory which would support a
claim. *McGee v. Weinberg, 97 Cal.App.3d 798, 803 (1979)*.

Here, without a clear statement of the legal basis for his claim, Claimant appears
to allege fraud and breach of fiduciary duty with respect to his short sale of 1,000 Mylan shares
on July 2, 1992. Although Fidelity vigorously denies any allegation of wrongdoing, Claimant
knew or should have known of his alleged claims when he received his trade confirmation in
early July 1992 and his month-end statement in early August 1992, since those documents fully
disclosed Claimant's open short position. Despite Claimant's allegations to the contrary
(Statement of Claim, 2:4), his short position in Mylan was specifically disclosed on his July 1992
monthly statement.[3] At that time, he had knowledge of the facts upon which he bases his claims,
those alleged claims accrued, and the statutes of limitations began to run. However, Claimant
did not commence this arbitration until May 1998, nearly 6 years after he had notice of the facts
underlying his claims.

---

[2]    Under the terms of the Customer Agreement, disputes relating to Claimant's accounts are governed by the
laws of the Commonwealth of Massachusetts.

[3]    Claimant has attached to his Statement of Claim as Exhibit 6 only the last page of a four-page statement for
the period June 27 – July 31, 1992. Fidelity has attached a full and complete copy of said statement hereto
as Exhibit A.



Virginia Hall
November 16, 1998
Page Four

**STEEFEL
LEVITT
& WEISS**

A PROFESSIONAL CORPORATION

     Even assuming *arguendo* that Claimant did not know the facts which gave rise to his allegations in July 1992, his claims are still time-barred. Claimant *explicitly admits* that he received a monthly statement for the period August 1 – August 28, 1992 on September 10, 1992 and that he discovered Fidelity's allegedly "fraudulent activities" at that time. (Statement of Claim, 4:17-18.) Therefore, Claimant was put on notice of his claims, and the applicable statutes of limitations began to run, no later than September 10, 1992.

     Each of Claimant's claims for breach of fiduciary duty also is governed by a three-year statute of limitations under both Massachusetts and California law. *See Mass. Gen. Laws ch. 260, § 2A; Cal. Code Civ. Proc. 338(d).* Thus, Claimant's breach of fiduciary duty claim is completely barred because Claimant asserts that he was aware that Fidelity allegedly failed to take certain actions (*e.g.*, failure to execute trades or failure to inform him of his Mylan positions) no later than September 10, 1992.

     Claimant's argument that the statutes of limitations did not accrue until 1994,[4] 1996 or 1998 is wholly without legal support. Claimant essentially argues that Fidelity's letters to him and the Securities and Exchange Commission wherein Fidelity denies Claimant's allegations, each constitute a new and independent fraud. This argument fails as a matter of law. The applicable statutes of limitations specifically state that a cause of action for fraud or breach of fiduciary duty begin to accrue upon the discovery of the facts constituting the fraud or breach. Claimant does not allege that he discovered any new facts upon receipt of Fidelity's letters to him and the Securities and Exchange Commission -- nor could he -- because those letters merely articulated Fidelity's position regarding the facts of this case.

     A letter of inquiry or complaint to the Securities and Exchange Commission or to Fidelity does not constitute commencement of an action sufficient to toll the statutes of limitations. The applicable statutes require *commencement* of an action within the prescribed period. *Cal. Code Civ. Proc. §335.* "An action is commenced, within the meaning of this title, when the complaint is filed." *Cal. Code Civ. Proc. §350.* Therefore, Claimant *commenced* this action on May 21, 1998, nearly six years after the statutes of limitation began to run, and nearly three years *after* his claims expired.

     Claimant was fully aware of his claims no later than September 10, 1992. Moreover, Claimant has demonstrated that he was fully capable of commencing this action within the prescribed period: he filed at least three *pro se* civil actions in San Francisco Superior Court between 1990 and 1996 -- the same time period in question in this case. (Attached hereto as Exhibit F are true and correct copies of such filings.) His failure to file timely this action bars any recovery.

---

[4]    Even assuming *arguendo* that the statutes began to run in 1994, Claimant's claims are still time-barred because the statutes of limitations would have expired in 1997, one year before Claimant filed this claim.

 

Virginia Hall
November 16, 1998
Page Five

STEEFEL
LEVITT
& WEISS

A PROFESSIONAL CORPORATION

    For the foregoing reasons, the applicable legal principles require that Claimant's stale claims be dismissed.

## II.    MR. CHIA'S CLAIMS REGARDING THE SIX-YEAR RULE ARE WITHOUT MERIT.

    Claimant does not dispute that the longest statute of limitations applicable to his claims is the three-year limitations period for fraud and breach of fiduciary duty pursuant to California Code of Civil Procedure § 338(d). (Second Supplemental Claim, 3:22.) Instead, Claimant argues that his claims are not time barred because the six-year eligibility provision of NASD Code of Arbitration Procedure Rule 10304 supercedes the applicable Massachusetts and California statutes of limitations. This argument fails as a matter of law.

    NASD Code of Arbitration Procedure Rule 10304 does not extend the applicable statutes of limitations. Without citing any supporting authority, Claimant argues that the time limitation for bringing an arbitration claim under NASD rules is six (6) years, not three years as mandated by California and Massachusetts law. (Second Supplemental Claim, 3:24-26.) Claimant is wrong. NASD Code Rule 10304 explicitly states that it does not extend the applicable statutes of limitations:

> No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. *This section shall not extend applicable statutes of limitations*, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction. (Emphasis added.)

Courts have consistently held that Rule 10304 is an eligibility requirement rather than a procedural statute of limitation. (*See, e.g., Ohio Co. v. Nemecek, 98 F.3d 234 (6th Cir. 1996)*) Thus, the applicable statutes of limitations apply.

 

Virginia Hall
November 16, 1998
Page Six

**STEEFEL
LEVITT
& WEISS**

A PROFESSIONAL CORPORATION

## CONCLUSION AND PRAYER

For the reasons stated above, Respondent Fidelity respectfully requests that all claims against it be dismissed and that Fidelity be awarded its costs, forum fees and such other relief as may be just and proper.

Respectfully submitted,

STEEFEL, LEVITT & WEISS
A Professional Corporation

By _Sean M. Fischer_
    Sean M. Fischer
Attorneys for Respondent
Fidelity Brokerage Services

cc: Samuel G. Chia (via U.S. Mail)

11704:71519.1

June 27 - July 31, 1992
Account number X04-022772

USA Investment detail

Holdings

Equities

| | Symbol | Quantity | Price | Market value |
|---|---|---|---|---|
| XOMA CORPORATION | XOMA | 3,250 | 13.5000 | 43,875.00 |
| Total holdings   M = margin | | | | 375.00 |

Brokerage activity
C = cash

| Settlement date | Transaction | Description | Price | Quantity | Amount |
|---|---|---|---|---|---|
| **Regular account activity** | | | | | |
| 07/02 | SHORT VS MARGIN | MARK TO MARKET | | | 600.69- |
| 07/02 | YOU SOLD | IMMUNE RESPONSE CORP REF/YDE/SUSA @ 21 1/2 | -2,000 | | 42,805.70 |
| 07/17 | SHORT VS MARGIN | MARK TO MARKET | | | 8,103.99- |
| 07/24 | SHORT VS MARGIN | MARK TO MARKET | | | 3,860.21- |
| 07/31 | SHORT VS MARGIN | MARK TO MARKET | | | 12,259.00 |
| 07/31 | SHORT VS MARGIN | MARK TO MARKET | | | 4,125.00- |
| **Short account activity** | | | | | |
| 07/02 | SHORT VS MARGIN | MARK TO MARKET | | | 600.69 |
| 07/07 | YOU BOUGHT | MC DONNELL DOUBLAS SHORT COVER REF/ZIM/CUSA @ 38 1/4 | 600 | | 23,099.99- |
| 07/09 | SHORT SALE | IMMUNE RESPONSE CORP SHORT SALE REF/YOM/SUSA @ 23 3/4 | -2,000 | | 47,296.00 |
| 07/10 | SHORT VS MARGIN | MARK TO MARKET | | | 8,105.99 |
| 07/10 | SHORT SALE | MYLAN LABS INC SHORT SALE RECORD DATE 07/15/92 PAYABLE OIC 08/01/92 CORRECTED CONFIRM @ 39 7/8 | -1,000 | | 39,686.44 |

August 1 - August 28, 1997
Account number XXX-022272

USA investment detail
Holdings
Equities
N    IMMUNE RESPONSE CORP
N    MYLAN LABS INC
N    XOMA CORPORATION

| Symbol | Quantity | Price | Market value | Amount |
|---|---|---|---|---|
| IMNR | 2,000 | 17.2500 | 34,500.00 | |
| MYL | -4,000 | 23.7500 | -95,000.00 | |
| XOMA | 3,250 | 11.2500 | 36,562.50 | |

Total holdings    N : margin    23,937.50CR

Broker-age activity

| Settlement date | Transaction | Description | Quantity | Amount |
|---|---|---|---|---|
| Regular account activity | | | | |
| 06/03 | YOU BOUGHT | BELO A H CORP DEL SER A FMLY COM REF/YOU/SUSA @ 45 1/4 | 600 | 27,309.23- |
| | | MARK TO MARKET | | 316.90- |
| 06/13 | | IMMUNE RESPONSE CORP REF/CLS/CUSA @ 21 | 2,000 | 47,191.90- |
| | | MARK TO MARKET | | |
| 06/16 | SHORT VS MARGIN | BELO A H CORP DEL SER A FMLY COM REF/SLS/SLIS @ 44 5/8 | -600 | 2,750.00 |
| 06/17 | YOU SOLD | MARK TO MARKET | | 26,615.69 |
| | | MARK TO MARKET | | |
| 06/23 | SHORT VS MARGIN | | | 7,701.12- |
| 06/28 | SHORT VS MARGIN | | -1,000 | 2,500.00 |
| Short account activity | | | | |
| 04/03 | DISTRIBUTION | MYLAN LABS INC | | 0.00 |
| 04/07 | SHORT VS MARGIN | MARK TO MARKET | | 316.90 |
| 06/16 | SHORT VS MARGIN | MARK TO MARKET | | 2,750.00- |
| 06/17 | SHORT SALE | MYLAN LABS INC SHORT SALE REF/SLS/SLIS @ 22 7/8 | -2,000 | 45,299.88 |
| | | MARK TO MARKET | | |
| 06/23 | SHORT VS MARGIN | MARK TO MARKET | | 7,701.12 |
| 06/28 | SHORT VS MARGIN | MARK TO MARKET | | 2,500.00- |